##### AT THE

## MARCH SESSION 1871, IN BOSTON.

##### PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT, } Justices.
Hon. SETH AMES,
Hon. MARCUS MORTON,

## COMMONWEALTH *vs.* JEROME G. KIDDER & another.

The Sts. of 1866, c. 285, and 1869, c. 152, do not justify the refining of petroleum at any place where a necessary consequence of the manufacture is the emission of vapors which constitute a nuisance at common law by their unwholesome and offensive nature.

INDICTMENT for a nuisance at common law; averring that on January 1, 1869, in Winthrop, near certain public highways and private dwelling-houses, the defendants set up and maintained certain furnaces, boilers, stills, retorts and other apparatus for refining and preparing for sale and use petroleum and other oils, at their manufactory, and on that day and divers other days between it and the day of the finding of the indictment, which was in March 1870, unlawfully and injuriously caused to be heated and boiled in said boilers and other vessels and apparatus large quantities of petroleum and other oils, and mixed them with other substances, and shook and agitated them in the process of refining and preparing them for sale and use, and

thereby caused to be emitted noisome, offensive and unwholesome substances, smokes, smells and stenches, which then and there filled and impregnated, and continue to fill and impregnate the earth and air, so as to render the earth and air corrupt, offensive, uncomfortable and unwholesome, to the great damage and common nuisance of all the citizens of the Commonwealth there inhabiting, being and residing, and going and returning through the said highways, and against the peace of the Commonwealth. Trial in the superior court in Suffolk, before *Putnam*, J., who allowed the following bill of exceptions:

"The Commonwealth proved that the defendants had set up furnaces, boilers, stills, retorts and other vessels, with other necessary apparatus, for the purpose of carrying on the business of refining and preparing for sale and use petroleum at their manufactory situate as described in the indictment; that from January 1, 1869, to the day of the finding of the indictment they had controlled, managed and operated the same; that on divers days and times between those two days they on said parcel of land heated and boiled in said boilers, stills, retorts and other vessels large quantities of petroleum, and then mixed the same with divers other substances, and shook and agitated the same for the purpose of refining and preparing said petroleum for sale and use; that by means thereof smokes, smells and stenches were emitted; and that these smokes, smells and stenches were very disagreeable to travellers passing and repassing on the highways near the factory, rendered many inhabitants of the town of Winthrop uncomfortable, and with some occasioned nausea, soreness of the throat and stricture of the head. Upon this evidence the Commonwealth rested the case, admitting that no oil other than petroleum had been manufactured or refined on the defendants' premises.

"Thereupon the defendants cited the St. of 1866, c. 285, and the St. of 1869, c. 152, and requested the judge to rule that no sufficient case had been made against them, and to instruct the jury to return a verdict of not guilty. This the judge declined to do; and ruled that neither of the statutes afforded any protection to the defendants against this indictment.

" The defendants then proved that it was impossible, during the time covered by the indictment, to manufacture and refine petroleum without throwing off disagreeable smokes and odors. And they offered further to prove that, during the time covered by the indictment, there had been used in their factory no other means and processes than were used in all the other like establishments throughout the Commonwealth at the times when said statutes were passed ; that, during the time, they had manufactured crude petroleum and kept and stored its products in distant and properly ventilated buildings, specially adapted to the purpose, and surrounded by an embankment constructed so as effectually to prevent the overflow of the petroleum or any of its products beyond the premises on which the same were kept, manufactured or refined ; that said buildings were occupied in no part as a dwelling ; and that the building nearest to said premises was more than fifty feet distant therefrom.

" The judge ruled, for the purpose of the trial, that none of this offered evidence was admissible for the purpose of bringing this factory within the protection of the statute, for which purpose alone it was offered. The defendants introduced no other evidence ; a verdict of guilty was thereupon returned ; and the defendants alleged exceptions to the foregoing rulings and refusals to rule."

*H. W. Paine & B. F. Brooks*, for the defendants. 1. Conceding, for the purposes of the argument upon this point, that the evidence shows a nuisance at common law, the question is, whether the defendants were to any extent protected in their business by the two statutes which they cited. If they were, and they did anything in excess of their protection, it would constitute another and different offence. *Call* v. *Allen*, 1 Allen, 137, 141, 143. *Commonwealth* v. *Odin*, 23 Pick. 275, 279. *State* v. *Godfrey*, 24 Maine, 232.

2. The St. of 1866, c. 285, § 1, reënacted in the St. of 1869, c. 152, § 5, is a legislative license to the defendants to refine petroleum on certain conditions. The indictment does not aver, and there was no offer on the part of the Commonwealth to prove, that the conditions were not complied with. On the con

trary, the evidence introduced or offered by the defendants shows a literal compliance with them, and that the disagreeable smokes and smells were an inevitable result of the manufacture. Legislative authority is a license. *Leigh* v. *Westervelt*, 2 Duer, 618. *First Baptist Church* v. *Utica & Schenectady Railroad Co.* 6 Barb. 313, 318. *Harris* v. *Thompson*, 9 Barb. 350, 364. *Williams* v. *New York Central Railroad Co.* 18 Barb. 222, 247. If the statutes were a license to any extent, and it was not needful for the Commonwealth to aver or prove wherein the license was exceeded, it was clearly competent for the defendants to prove that they had not exceeded it.

3. But the intent and effect of the statutes was, to take the refining of petroleum out of the category of nuisances at common law, and at the same time invest municipal officers with powers to regulate the authorized processes of manufacture. St. 1866, c. 285, §§ 1–3. St. 1869, c. 152, §§ 5, 6, 9. *Commonwealth* v. *Cooley*, 10 Pick. 37. *Commonwealth* v. *Marshall*, 11 Pick. 350. *Jennings* v. *Commonwealth*, 17 Pick. 80.

*C. Allen*, Attorney General, for the Commonwealth, besides some of the authorities referred to by the defendants and in the opinion, cited Gen. Sts. *c.* 26, §§ 52–60; *c.* 88, § 51; *Rex* v. *White*, 1 Burr. 333; *State* v. *Haines*, 30 Maine, 65.; *State* v. *Hart*, 34 Maine, 36; *Commonwealth* v. *Brown*, 13 Met. 365; *Wesson* v. *Washburn Iron Co.* 13 Allen, 95, 104; *State* v. *Mullikin*, 8 Blackf. 260; *United States* v. *Elder*, 4 Cranch C. C. 507, 508; *Commonwealth* v. *McDonough*, 13 Allen, 581, 584; *Rex* v. *Cross*, 2 C. & P. 48¼; *Luning* v. *State*, 1 Chandler (Wisc.) 178, 185, 186; *Ryan* v. *Copes*, 11 Rich. 217, 237, 238; *Rex* v. *Crunden*, 2 Camp. 89; *Springfield* v. *Connecticut River Railroad Co.* 4 Cush. 63, 69–74; *Salem* v. *Eastern Railroad Co.* 98 Mass. 431, 442; *Stoughton* v. *State*, 5 Wisc. 291.

GRAY, J. The only ground of defence, upon which the defendants rely, is that they are protected against this indictment by the Sts. of 1866, *c.* 285, and 1869, *c.* 152. In order to ascertain the intention of the legislature in enacting these statutes, it is important to take into consideration not only the provisions of the statutes themselves, but also the law as it stood before their pas-

sage, and the rule that statutes in derogation of the common law are to be construed strictly.

A nuisance at common law may consist in the keeping or manufacture of gunpowder, naphtha, or other explosive or inflammable substances in such quantities and places or in such a manner as to be dangerous to the persons and property of the inhabitants of the neighborhood. *People* v. *Sands*, 1 Johns. 78. *Cheatham* v. *Shearon*, 1 Swan (Tenn.) 213. *Regina* v. *Lister*, Dearsly & Bell, 209. It may also consist in the carrying on of any trade or business in such a manner as to emit offensive odors and stenches, either injurious to the health of the public, or making the occupation of neighboring dwelling-houses uncomfortable and disagreeable. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Commonwealth* v. *Upton*, 6 Gray, 473. *Commonwealth* v. *Rumford Chemical Works*, 16 Gray, 231. *Bamford* v. *Turnley*, 3 B. & S. 62.

The St. of 1865, c. 244, imposed a penalty of $1000 on any one who should store or keep petroleum or naphtha in a greater quantity than five hundred gallons in one locality without license from the mayor and aldermen or selectmen ; and authorized city councils and selectmen to adopt such rules and regulations as they might deem reasonable in relation to the storage, keeping and sale thereof within the limits of their municipalities.

The St. of 1866, c. 285, § 1, is as follows : " Crude petroleum, or any of its products, may be stored, kept, manufactured or refined, in detached and properly ventilated buildings specially adapted to the purpose, and surrounded by an embankment so constructed as to effectually prevent the overflow of said petroleum or any of its products beyond the premises on which the same may be kept, manufactured or refined ; said buildings to be occupied in no part as a dwelling, and if less than fifty feet from any other building must be separated therefrom by a stone or brick wall at least ten feet high and sixteen inches thick." Section 2 imposed a penalty of $500 on any one who should manufacture, refine, mix, store or keep any oil or fluid, composed wholly or in part of any of the products of petroleum, in a greater quantity than five hundred gallons in any one locality, except as provided in § 1, without a license from the mayor and aldermen or

selectmen, to continue in force not more than one year and revocable at their pleasure. Section 3 authorized city councils and selectmen to adopt such rules and regulations as they might deem reasonable, not inconsistent with the provisions of that act, in relation to the manufacture, mixing, storing, keeping and selling of any of said products. And § 4 repealed the St. of 1865.

The St. of 1869, *c.* 152, § 5, reënacted the St. of 1866, *c.* 285, § 1, with the single difference of substituting twelve for sixteen inches in the thickness of the wall required. Sections 6 and 9 of the St. of 1869 do not materially differ from §§ 2 and 3 of the St. of 1866. The other sections of the St. of 1869 relate only to the inspection, storing, selling, mixing for sale, and offering for sale, of such products.

These enactments are manifestly intended to protect the public against the dangers arising from the explosive and inflammable nature of petroleum ; and, having regulated the whole subject in that aspect, they might well be deemed to protect any establishment, guarded as they direct, from indictment as a nuisance on account of such dangers only. But they contain no provisions for preventing the spread of unwholesome and offensive odors in the course of the manufacture ; and if the defendants' position were sustained, the result would be that no limit would be put to such manufacture in the most crowded and populous portions of any town or city. The reasonable, if not the necessary, inference is, that it was not the intention of the legislature to establish a new rule in this regard, but to leave the question whether the manufacture is carried on at such places and in such a manner as to be unwholesome and offensive to the public, and on that account indictable as a nuisance, to be determined by the rules of the common law. *Exceptions overruled.*