*S. J. Elder*, for the defendants.
*H. Mayo*, for the plaintiff.

---

HENRY SAWYER & another *vs.* CHARLES G. DAVIS & others.

Plymouth. Oct. 16, 1883. — Jan. 9, 1884. FIELD & W. ALLEN, JJ., absent.

After the determination by this court, on a bill in equity, that the ringing of a bell on a mill, at a certain hour in the morning, was a private nuisance to the plaintiff, and after a final injunction was issued restraining such ringing, the St. of .1883, c. 84, was passed, authorizing " manufacturers and others employing workmen, for the purpose of giving notice to such employees, to ring bells and use whistles and gongs of such size and weight, in such manner and at such hours as the board of aldermen of cities and the selectmen of towns may in writing designate." The selectmen of the town where the mill was situated granted a license to the owner to ring the bell on the mill at the hour at which he was prevented from ringing it by the injunction. *Held*, on a bill of review brought by the mill-owner, seeking to have the injunction modified, that the statute was constitutional, and that the bill could be maintained.

BILL OF REVIEW, alleging the following facts :

The plaintiffs, who were manufacturers in Plymouth, were restrained by a decree of this court, made on October 1, 1881, upon a bill in equity brought by the present defendants, from ringing a bell on their mill before the hour of six and one half o'clock in the morning ; which decree was affirmed by the full court on September 7, 1882. [See *Davis* v. *Sawyer*, 133 Mass. 289.] On March 28, 1883, the Legislature passed an act, which took effect upon its passage, as follows : " Manufacturers and

others employing workmen are authorized, for the purpose of giving notice to such employees, to ring bells and use whistles and gongs of such size and weight, in such manner and at such hours as the board of aldermen of cities and the selectmen of towns may in writing designate." [St. 1883, c. 84.] On April 18, 1883, the selectmen of Plymouth granted to the plaintiffs a written license to ring the bell on their mill in such manner, and at such hours, beginning at five o'clock in the morning, as they were accustomed to do prior to the injunction of this court.

The prayer of the bill was that the injunction might be dissolved, or that the decree might be so modified as to enable the plaintiffs to act under their license without violating the decree of this court; and for other and further relief.

The defendants demurred to the bill, assigning, among other grounds of demurrer, that the St. of 1883, c. 84, was unconstitutional, so far as applicable to the defendants.

Hearing on bill and demurrer, before *Colburn*, J., who reserved the case for the consideration of the full court.

*C. G. Davis*, for the defendants.

*F. D. Allen*, for the plaintiffs.

C. ALLEN, J. Nothing is better established than the power of the Legislature to make what are called police regulations, declaring in what manner property shall be used and enjoyed, and business carried on, with a view to the good order and benefit of the community, even although they may to some extent interfere with the full enjoyment of private property, and although no compensation is given to a person so inconvenienced. *Bancroft* v. *Cambridge*, 126 Mass. 438, 441. In most instances, the illustrations of the proper exercise of this power are found in rules and regulations restraining the use of property by the owner, in such a manner as would cause disturbance and injury to others. But the privilege of continuing in the passive enjoyment of one's own property, in the same manner as formerly, is subject to a like limitation; and with the increase of population in a neighborhood, and the advance and development of business, the quiet and seclusion and customary enjoyment of homes are necessarily interfered with, until it becomes a question how the right which each person has of prosecuting his lawful business

in a reasonable and proper manner shall be made consistent with the other right which each person has to be free from unreasonable disturbance in the enjoyment of his property. *Merrifield* v. *Worcester*, 110 Mass. 216, 219. In this conflict of rights, police regulations by the Legislature find a proper office in determining how far and under what circumstances the individual must yield with a view to the general good. For example, if, in a neighborhood thickly occupied by dwelling-houses, any one, for his own entertainment or the gratification of a whim, were to cause bells to be rung and steam-whistles to be blown to the extent that is usual with the bells and steam-whistles of locomotive engines near railroad stations in large cities, there can be no doubt that it would be an infringement of the rights of the residents, for which they could find ample remedy and vindication in the courts. But if the Legislature, with a view to the safety of life, provides that bells shall be rung and whistles sounded, under those circumstances, persons living near by must necessarily submit to some annoyance from this source, which otherwise they would have a right to be relieved from.

It is ordinarily a proper subject for legislative discretion to determine by general rules the extent to which those who are engaged in customary and lawful and necessary occupations shall be required or allowed to give signals or warnings by bells or whistles, or otherwise, with a view either to the public safety, as in the case of railroads, or to the necessary or convenient operation and management of their own works ; and ordinarily such determination is binding upon the courts, as well as upon citizens generally. And when the Legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid, upon the ground that the Legislature is ordinarily the proper judge of what the public good requires, unless carried to such an extent that it can fairly be said to be an unwholesome and unreasonable law. *Bancroft* v. *Cambridge*, 126 Mass. 441. It is accordingly held in many cases, and is now a well-established rule of law, at least in this Commonwealth, that the incidental injury which results to the owner of property situated near a railroad, caused by the necessary noise, vibration, dust, and smoke from the passing trains, which would clearly amount to an actionable nuisance if the operation of the railroad were not

authorized by the Legislature, must, if the running of the trains is so authorized, be borne by the individual, without compensation or remedy in any form.  The legislative sanction makes the business lawful, and defines what must be accepted as a reasonable use of property and exercise of rights on the part of the railroad company, subject always to the qualification that the business must be carried on without negligence or unnecessary disturbance of the rights of others.  And the same rule extends to other causes of annoyance which are regulated and sanctioned by law.  *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1, 6, 7.  *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10, 14.  *Bancroft* v. *Cambridge*, 126 Mass. 441.  *Call* v. *Allen*, 1 Allen, 137.  *Commonwealth* v. *Rumford Chemical Works*, 16 Gray, 231, 233.  *Struthers* v. *Dunkirk, Warren & Pittsburgh Railway*, 87 Penn. St. 282.  *Hatch* v. *Vermont Central Railroad*, 28 Vt. 142, 147.  *Brand* v. *Hammersmith & City Railway*, L. R. 1 Q. B. 130 ; 2 Q. B. 223 ; 4 H. L. 171.  *Vaughan* v. *Taff Vale Railway*, 5 H. & N. 679, 685, 687.  *Rex* v. *Pease*, 4 B. & Ad. 30.  Sedgw. St. & Const. Law, 435, 436.

The recent case of *Baltimore & Potomac Railroad* v. *Fifth Baptist Church*, 108 U. S. 317, is strongly relied on by the defendants as an authority in their favor.  There are, however, two material and decisive grounds of distinction between that case and this.  There the railroad company had only a general legislative authority to construct works necessary and expedient for the proper completion and maintenance of its railroad, under which authority it assumed to build an engine-house and machine-shop close by an existing church, and it was held that it was never intended to grant a license to select that particular place for such works, to the nuisance of the church.  Moreover, in that case, the disturbance was so great as not only to render the church uncomfortable, but almost unendurable as a place of worship, and it virtually deprived the owners of the use and enjoyment of their property.  We do not understand that it was intended to lay down, as a general rule applicable to all cases of comparatively slight though real annoyance, naturally and necessarily resulting in a greater or less degree to all owners of property in the neighborhood from a use of property or a method of carrying on a lawful business which clearly falls within the

terms and spirit of a legislative sanction, that such sanction will not affect the claim of such an owner to relief; but rather that the court expressly waived the expression of an opinion upon the point.

In this Commonwealth, as well as in several of the United States and in England, the cases already cited show that the question is settled by authority, and we remain satisfied with the reasons upon which the doctrine was here established. Courts are compelled to recognize the distinction between such serious disturbances as existed in the case referred to, and comparatively slight ones, which differ in degree only, and not in kind, from those suffered by others in the same vicinity. Slight infractions of the natural rights of the individual may be sanctioned by the Legislature under the proper exercise of the police power, with a view to the general good. Grave ones will fall within the constitutional limitation that the Legislature is only authorized to pass reasonable laws. The line of distinction cannot be so laid down as to furnish a rule for the settlement of all cases in advance. The difficulty of marking the boundaries of this legislative power, or of prescribing limits to its exercise, was declared in *Commonwealth* v. *Alger*, 7 Cush. 53, 85, and is universally recognized. Courts, however, must determine the rights of parties in particular cases as they arise; always recognizing that the ownership of property does not of itself imply the right to use or enjoy it in every possible manner, without regard to corresponding rights of others as to the use and enjoyment of their property; and also that the rules of the common law, which have from time to time been established, declaring or limiting such rights of use and enjoyment, may themselves be changed as occasion may require. *Munn* v. *Illinois*, 94 U. S. 113, 134.

In the case before us, looking at it for the present without regard to the decree of this court in the former case between these parties, we find nothing in the facts set forth which show that the statute relied on as authorizing the plaintiffs to ring their bell (St. 1883, *c.* 84) should be declared unconstitutional. It is virtually a license to manufacturers, and others employing workmen, to carry on their business in a method deemed by the Legislature to be convenient, if not necessary, for the purpose of giving notice, by ringing bells, and using whistles and gongs, in

such manner and at such times as may be designated in writing by municipal officers. In character, it is not unlike numerous other instances to be found in our statutes, where the Legislature has itself fixed, or has authorized municipal or other boards or officers to fix, the places, times, and methods in which occupations may be carried on, or acts done, which would naturally be attended with annoyance to individuals. The example of bells and whistles on locomotive engines has already been mentioned. Reference may also be made to the statutes regulating the use of stationary steam-engines, the places and manner of manufacturing or keeping petroleum, of carrying on other offensive trades and occupations, of storing gunpowder, and of establishing hospitals, stables, and bowling-alleys.

The defendants, however, contend that a different question arises in the present case, where the plaintiffs rely upon a legislative sanction given to acts after it had been determined by this court that the doing of them was attended with a peculiar injury to the defendants, which entitled them to a remedy as for a nuisance. There can be no doubt that such sanction would be a good defence to an indictment for a nuisance; or to a proceeding instituted by an individual, whose only grievance was that he had sustained special damage in consequence of being disturbed in the enjoyment of some public right, such as a right to travel upon a highway or river. His public right may clearly be regulated and controlled by the Legislature, after a decision by the court as well as before. *Commonwealth* v. *Essex Co.* 13 Gray, 239, 247. But the argument is urged upon us with great force, that in the present case there had been a judicial determination that the ringing of the bell, at the hours now authorized by the terms of the statute and the designation of the selectmen, was a private nuisance to the defendants, not growing out of any public right, and that the statute ought not, as a matter of construction, to be held applicable to this case; or, if such is its necessary construction, that it is unconstitutional, as interfering with their vested rights.

In the first place, we can have no doubt that the statute by its just construction is in its terms applicable to the present case. It is undoubtedly true that neither a general authority nor a particular license is to be so construed as to be held to

sanction what was not intended to be sanctioned. A general authority is not necessarily to be treated as a particular license; *Commonwealth* v. *Kidder*, 107 Mass. 188; and in some cases, even where a particular license or authority has been given, as to keep an inn, alehouse, or slaughter-house in a particular place, which is specified, this authority has not been deemed to sanction the keeping of it in an improper manner. *Rex* v. *Cross*, 2 C. & P. 483. *Commonwealth* v. *McDonough*, 13 Allen, 581, 584. *State* v. *Mullikin*, 8 Blackf. 260. *United States* v. *Elder*, 4 Cranch C. C. 507. And, ordinarily, a statute which authorizes a thing to be done, which can be done without creating a nuisance, will not be deemed to authorize a nuisance. In such case, it is not to be assumed that it was contemplated by the Legislature that what was so authorized would have the necessary effect to create a nuisance, or that it would be done in such a manner as to create a nuisance; and, if a nuisance is created, there will in such cases ordinarily be a remedy at law or in equity. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Haskell* v. *New Bedford*, 108 Mass. 208, 215. *Commonwealth* v. *Kidder*, 107 Mass. 188. But, on the other hand, the authority to do an act must be held to carry with it whatever is naturally incidental to the ordinary and reasonable performance of that act. When the Legislature authorized factory bells to be rung, it must have been contemplated that they would be heard in the neighborhood. That is a natural and inevitable consequence. The Legislature must be deemed to have determined that the benefit is greater than the injury and annoyance; and to have intended to enact that the public must submit to the disturbance, for the sake of the greater advantage that would result from this method of carrying on the business of manufacturing. It must be considered, therefore, in this case, that a legislative sanction has been given to the very act which this court found to create a private nuisance.

It is then argued that the Legislature cannot legalize a nuisance, and cannot take away the rights of the defendants as they have been ascertained and declared by this court; and this is undoubtedly true, so far as such rights have become vested. For example, if the plaintiff under an existing rule of law has a right of action to recover damages, for a past injury suffered by him, his remedy cannot be cut off by an act of the Legislature.

So also, if, in a suit in equity to restrain the continuance of a nuisance, damages have been awarded to him, or costs of suit, he would have an undoubted right to recover them, notwithstanding the statute. But, on the other hand, the Legislature may define what in the future shall constitute a nuisance, such as will entitle a person injured thereby to a legal or equitable remedy, and may change the existing common-law rule upon the subject. It may declare, for the future, in what manner a man may use his property or carry on a lawful business without being liable to an action in consequence thereof; that is, it may define what shall be a lawful and reasonable mode of conduct. This legislative power is not wholly beyond the control of the courts, because it is restrained by the constitutional provision limiting it to wholesome and reasonable laws, of which the court is the final judge, but, within this limitation, the exercise of the police power of the Legislature will apply to all within the scope of its terms and spirit. The fact that the rights of citizens, as previously existing, are changed, is a result which always happens; it is indeed in order to change those rights that the police power is exercised. So far as regards the rights of parties accruing after the date of the statute, they are to be governed by the statute; their rights existing prior to that date are not affected by it. To illustrate this view, let it be supposed that the case between the present parties in its original stage had been determined in favor of the manufacturers, under which decision they would have had a right to ring their bell; and that afterwards a statute had been passed providing that manufacturers should not ring bells except at such hours as might be approved by the selectmen; and that these manufacturers had then proceeded to ring their bell at other hours, not included in such approval. It certainly could not be said that they had a vested right to do so, under the decision of the court.

The injunction which was awarded by the court, upon the facts which appeared at the hearing, did not imply a vested right in the present defendants to have it continued permanently. Though a final determination of the case before the court, and though binding and imperative upon the present plaintiffs, and enforceable against them by all the powers vested in a court of equity, yet they were at liberty at any time, under new circumstances

making it inequitable for it to be longer continued, to apply to the court for a review of the case and a dissolution of the injunction. In respect to such a state of facts, an injunction can never be said to be final, in the sense that it is absolute for all time. Even without any new legislation affecting the rights of the parties, with an increase of their own business and a general increase of manufacturing and other business in the vicinity, and of a general and pervading change in the character of the neighborhood, it might be very unreasonable to continue an injunction which it was in the first instance entirely reasonable and proper to grant. The ears of the court could not under such new circumstances be absolutely shut to an application for its modification, without any new statute declaring the policy of the Commonwealth in respect to any branch of business or employment. But a declaration by the Legislature that, in its judgment, it is reasonable and necessary for certain branches of business to be carried on in particular ways, notwithstanding the incidental disturbance and annoyance to citizens, is certainly a change of circumstances which is entitled to the highest consideration of the court; and in the present case we cannot doubt that it is sufficient to entitle the plaintiffs to relief from the operation of the injunction.

The method of procedure to which the plaintiffs have resorted is the usual and proper one in such circumstances. 2 Dan. Ch. Pl. & Pr. (4th Am. ed.) 1577, note 3. Story Eq. Pl. §§ 404 *& seq.* *Clapp* v. *Thaxter*, 7 Gray, 384. And, for authorities tending to show that the plaintiffs are entitled to the relief which they seek, in consequence of a subsequent statute changing the rights of the parties, see *Pennsylvania* v. *Wheeling & Belmont Bridge*, 18 How. 421; *The Clinton Bridge*, 10 Wall. 454, 463; *Gilman* v. *Philadelphia*, 3 Wall. 713, 732; *South Carolina* v. *Georgia*, 93 U. S. 4, 12; *Bridge Co.* v. *United States*, 105 U. S. 470, 480; *Commonwealth* v. *Old Colony & Fall River Railroad*, 14 Gray, 93, 97; *Bartholomew* v. *Harwinton*, 33 Conn. 408.

*Demurrer overruled.*