THOMAS P. FERRITER & another *vs.* JAMES HERLIHY.

Hampden.    April 6, 1933. — June 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Nuisance. Equity Pleading and Practice,* Decree.  *License.  Milk.*

In a suit in equity, it appeared that the defendant, who had from municipal authorities a license to do business as a milk dealer and a license to pasteurize milk in a plant in the basement of his dwelling, which was in a neighborhood exclusively residential except for his business, and permits from the building commissioner to build additions to his milk room, to erect a steam boiler for dairy purposes and for the installation of an oil burner, so conducted his business that each day between 7:30 and 10:30 A.M. he created a nuisance due to unreasonable noise in loading and unloading cans of milk, and also a nuisance due to noise at periods between midnight and 6 A.M. in loading and unloading crates of glass bottles of milk; that a degree of care might reasonably be used as to the cans which would very materially reduce the amount of noise; but, as to the crates of bottles, it did not appear that the use of greater care would so reduce the volume of noise as entirely to prevent interference with reasonable enjoyment of life by the plaintiff and with his health.  No other terms or conditions of the licenses given to the defendant appeared, nor was there in the record before this court basis for a finding that such operations by the defendant were reasonably necessary or incidental to the conduct of the business licensed.  A final decree was entered enjoining the defendant, "his agents, servants, employees and persons bringing dairy products" from loading crates or cases of glass bottles or milk containers on trucks on his premises between the hours of 9 P.M. and 7:30 A.M.; and from loading or unloading trucks with milk containers, cases or crates between the hours of 7:30 A.M. and 9 P.M. "in such manner as to constitute a nuisance"; and awarding damages.  On appeal by the defendant, it was *held*, that

(1) That portion of the decree which had to do with the loading and unloading of milk containers between the hours of 7:30 A.M. and 9 P.M. was proper since by its terms it went no further than to forbid the carrying on of those operations "in such a manner as to constitute a nuisance";

(2) That part of the decree which prohibited any loading of trucks with milk containers on the defendant's premises between the hours of 9 P.M. and 7:30 A.M. was no more than a reasonable restriction of the defendant's conduct of his business, and was warranted in the circumstances;

(3) A contention by the defendant that, because licenses had been issued to him to carry on a retail milk business in his basement, he could be restrained only from negligence in the creation of a nuisance was without merit: the sanction which the General Court gives by authorizing local officials to issue a license to conduct a certain business on specified premises is subject not only to the limitation that the business must be carried on without negligence, but to the further qualification that it must be conducted without unnecessary disturbance of the rights of others;

(4) The decree was no broader than was necessary to protect the plaintiff's rights, and it was affirmed.

BILL IN EQUITY, filed in the Superior Court on April 29, 1932.

The suit was referred to a master. Material facts found by him are stated in the opinion. By order of *Whiting,* J., there were entered an interlocutory decree overruling exceptions by the plaintiff to the master's report, and confirming the report, and the final decree quoted in the opinion. The defendant appealed.

*J. L. Gray,* for the defendant.

*J. E. Kerigan,* for the plaintiffs.

DONAHUE, J. The plaintiffs and the defendant own adjoining parcels of real estate in the city of Westfield. The plaintiffs with their children have their home in the single house on their land. The defendant lives on the first floor of his house and lets the upper story. He conducts in the basement of his house, which is about twenty-five feet distant from the plaintiffs' dwelling, a retail milk business in which he now employs eight men and three automobile trucks. When he began business there in 1923 he sold about thirty quarts of milk a day. At the time of the trial he delivered to his customers approximately eleven hundred quarts daily. The establishment in the basement consists of rooms used for washing milk cans and bottles, a room for pasteurizing milk and a cold storage room.

Several grounds for relief stated in the plaintiffs' bill

have become of no consequence because of adverse findings of fact by the master. In two respects he found facts which constitute nuisances at common law. Throughout the year, between the hours of 7:30 and 10:30 A.M. daily, milk is brought to the defendant's premises in large cans by his trucks and four trucks of milk producers; the cans are unloaded on a dirt driveway and cement walk on the defendant's premises and empty cans are then loaded on the trucks and taken away. The time taken daily in these operations is approximately an hour and a half. They cause considerable noise the extent of which is somewhat dependent upon whether the filled cans are unloaded on, and the empty cans reloaded from, the dirt driveway or the cement walk. The cans are frequently dropped upon and rolled or dragged along the walk. The master appointed in the bill in equity brought by the plaintiffs found that noise of such frequency, character, intensity and duration was thus caused as materially to offend the sensibilities of a person in ordinary condition of health in the situation of the plaintiffs and materially to interfere with the enjoyment of their home and its surroundings. He further found that a degree of care might reasonably be used in unloading and loading the cans upon the trucks which would very materially reduce the volume of such noise, and that, in so far as it was a question of fact, the conduct of the defendant constituted a nuisance.

The milk is delivered to the defendant's customers in glass bottles. These are placed in wooden crates or cases, brought from the basement and placed on the cement walk. A crate with bottles filled with milk weighs about sixty pounds. The bottles, cans and cases used by the defendant are of a standard type in common use by milk dealers in the vicinity of Westfield. From the concrete walk the crates are lifted on to the trucks. The process of loading consists of placing the crates or cases on the floor of the truck, pushing them along on the floor and then placing on the first tier other crates or cases until the truck is loaded. For about nine months in the year two trucks are loaded with crates or cases each night between midnight and 1 A.M. and

a third truck about 3 A.M. Each such loading takes fifteen to thirty minutes. In the winter season these loadings are made in the daytime. One of the defendant's trucks returns and unloads empty bottles about 6 A.M. and the other two later in the morning. The master found that by the noise incident to such loading of the trucks in the early morning hours both plaintiffs were repeatedly awakened when their windows were open and were disturbed so frequently and to such an extent as materially to interfere with their reasonable enjoyment of life and to some extent with their health. He also found that the defendant had not always used reasonable care in the handling of the crates and cases and that the noise from that source could be materially reduced by the use of greater care in such handling. He stated that he was unable to find on the evidence whether the use of such greater care would so reduce the volume of noise as entirely to prevent interference with their reasonable enjoyment of life and with their health.

The master found that the defendant was duly licensed as a milk dealer, had a license to pasteurize milk in his plant and had received permits from the building commissioner of the city to build additions to his milk room, to erect a steam boiler for dairy purposes and for the installation of an oil burner. The terms or conditions of these licenses and permits do not appear in the record.[*]

The master found the plaintiff Clara E. Ferriter to be nervously affected by the noises above described, that reasonable compensation for the interference with the reasonable enjoyment of her home and surroundings and for the nervous effect on her was $200 and that such compensation for the plaintiff Thomas P. Ferriter, who was materially less affected, was $100.

The final decree enjoined the defendant, his agents, servants, employees and persons bringing dairy products (a) from loading crates or cases of glass bottles or milk containers on trucks on his premises between the hours of 9 P.M. and 7:30 A.M.; (b) from loading or unloading trucks with milk containers, cases or crates between the hours of 7:30 A.M. and 9 P.M. in such manner as to constitute a

nuisance. The decree also awarded damages to the plaintiffs. The defendant appealed from the final decree.

It is not now contended by the defendant that, on the facts found by the master, the conclusion is not warranted that the conduct of the defendant constituted a nuisance at common law. He states in his brief that "The appeal was taken because the decree is broader than findings of the master will support and the law will allow, and constitutes a violation of the defendant's rights of property," and that he here seeks a modification of the decree so that he "will be enjoined from negligent acts only." The decree which was entered does not contain general prohibitions against the defendant conducting the business of milk dealer under his licenses and permits. It deals with operations on his premises but outside his building which are conducted negligently or with unreasonable disturbances of the rights of the plaintiffs. That portion of the decree which has to do with the loading and unloading of milk containers between the hours of 7:30 A.M. and 9 P.M. by its terms goes not farther than to forbid the carrying on of those operations "in such a manner as to constitute a nuisance." The past conduct of the defendant in this regard has been negligent: "the care with which such cans are handled is the effective cause of such noise" and it is the noise which constitutes this nuisance. The nuisance is created by the defendant's negligence and this portion of the decree does no more than accomplish an abatement of the nuisance by requiring the defendant to refrain from negligence.

The decree goes farther in the abatement of the nuisance which the defendant created in the hours of the night; it prohibits any loading of trucks with milk containers on the defendant's premises between the hours of 9 P.M. and 7:30 A.M. On the facts found by the master, this is no more than a reasonable restriction of the defendant's conduct of his business. *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206, and cases cited. The neighborhood except for the defendant's business is exclusively residential. The noise resulting from these operations conducted at a time

generally devoted to sleep is of such a character as to interfere with the health of the plaintiffs and their reasonable enjoyment of life. At times some of the noises are due to lack of care in the handling of the milk containers but it could not be found that, even if greater care were used, the interference with the plaintiffs' rights would be eliminated. An injunction limited to the restraint of negligence alone would not entirely abate this nuisance.

The defendant contends that because licenses have been issued to him to carry on a retail milk business in his basement he can be restrained here only from negligence in the creation of a nuisance. A nuisance may be created by continuing negligence, in which case the negligence is the gist of any action brought for relief by one who thereby suffers injury. *Smethurst* v. *Barton Square Independent Congregational Church,* 148 Mass. 261, 265. But, without negligence, a nuisance may exist because one man's manner or persistent use of his property results in an unreasonable interference with the rights of his neighbor. *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447, 452. *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536, 544. *McFarlane* v. *Niagara Falls,* 247 N. Y. 340. The sanction that the Legislature gives by authorizing local officials to issue a license to conduct a certain business on specified premises is subject not only to the limitation that the business must be carried on without negligence, but to the further qualification that it must be conducted without "unnecessary disturbance of the rights of others." *Sawyer* v. *Davis,* 136 Mass. 239, 242. *Prest* v. *Ross,* 245 Mass. 342, 345, 346. It does not appear that the defendant's licenses specifically authorized the operations complained of or any operations in the night hours when these were performed by the defendant. In this respect the case differs from cases like *Sawyer* v. *Davis,* 136 Mass. 239, *Murtha* v. *Lovewell,* 166 Mass. 391, *Levin* v. *Goodwin,* 191 Mass. 341, and *Sawyer* v. *Boston Elevated Railway,* 243 Mass. 469. Nor is there any basis in the record for a finding that the performance of the operations at the time they were performed was reasonably necessary or incidental to

the conduct of the business licensed. The operations constituted a nuisance at common law. It is not to be assumed without facts justifying the finding that the licensing authority intended to authorize the creation of a nuisance not incidental to the reasonable use of the premises for the purposes for which they were licensed. *Beane* v. *H. K. Porter, Inc.* 280 Mass. 538, 542, and cases cited. *Bacon* v. *Boston,* 154 Mass. 100.

The decree was no broader than was necessary to protect the plaintiffs' rights.

*Decree affirmed with costs.*