Sosman, J.
Plaintiff Cheryl Allison has brought the present action alleging that defendant’s replication of wetlands on adjacent property constitutes a nuisance because it will have the effect of subjecting a portion of plaintiffs property to environmental regulation. Defendant has moved for summary judgment on the ground that its replication of the wetlands pursuant to a Department of Environmental Protection Superseding Order of Conditions cannot, as a matter of law, be deemed a nuisance. For the following reasons, defendant’s motion for summary judgment is ALLOWED.
Facts
Plaintiff Cheryl Allison is the owner of a single-family home on approximately 44,935 square feet of land located at 146 Old Lancaster Road in Sudbury. Adjacent to Allison’s home is a subdivision known as Green Hill Estates, consisting of six house lots. Green Hill Estates was previously owned by the Trustees of The Clark Family Trust (later referred to as the Sudbury Realty Trust) and is presently owned by defendant Barberry Homes, Inc.
Back in 1986, the Trust applied to the Sudbury Conservation Commission for approval of its proposed development of the six lots. The Trust’s plans had included filling of some bordering vegetated wetland located on the subdivision property, and the project was therefore subject to state and local review under wetlands protection statutes and regulations. The Commission rejected the Trust’s proposal, whereupon the Trust appealed the matter to the Department of Environmental Protection (DEP).
While the matter was pending before DEP, the Trust modified the proposal to include the replication of wetlands elsewhere within the subdivision in exchange for the wetlands that would be lost due to filling. On March 3, 1992, DEP approved that modified proposal by issuing a Superseding Order of Conditions. The Order permitted the filling of certain wetlands on the property on the condition that the owner construct two areas of replicated wetlands, one on the boundary abutting Allison’s property and the other approximately 90 feet from Allison’s property. The requirement of replicated wetlands was one of the “special conditions” included in the Order, which required that the work “shall conform” to the plans that specified the nature and location of the replication.
The “General Conditions" of the Order provided that the Order “does not grant any property rights or any exclusive privileges; it does not authorize any injury to private property or invasion of private rights.” The General Conditions also provided that the work authorized was to be completed within three years, but that “(n]o work shall be undertaken until all administrative appeal periods from this Order have elapsed or, if such an appeal has been filed, until all proceedings before the Department have been completed.” However, in its “Special Conditions,” the Order provided that “(n]o work shall commence on site until all appeal periods have elapsed and this Superseding Order of Conditions has been recorded with the registry of deeds and the Department formally notified via the form provided at the end of this Order.”
Upon completion of the work, the owner was to submit a request for issuance of a Certificate of Compliance. However, in the Special Conditions, the Order stated that the wetland replication work was to be completed prior to any request for compliance, that DEP would not issue a certificate of compliance without the replication work being done, and that compliance would not be considered complete “until after the passage of at least two full growing seasons.”
The Sudbury Conservation Commission filed an administrative appeal of the Order within DEP. That appeal was dismissed on September 9, 1993. On September 24, 1993, the Commission filed a motion for reconsideration. That motion was denied on October 29, 1993. On November 26, 1993, the Commission filed an action in Superior Court challenging DEP’s issuance of the Superseding Order. That appeal was dismissed as untimely filed, whereupon the Commission appealed the matter to the Appeals Court. On March 13, 1996, the Appeals Court affirmed the Su-, perior Court’s dismissal of the appeal, at which point all appeals of the Superseding Order were exhausted.
The Trust proceeded to apply for a Water Quality Certification for the project. After a site visit by DEP and the Commission on November 20, 1996, DEP issued the required Certification on January 2, 1997. On October 2, 1997, the Trust filed the Superseding Order of Conditions with the Middlesex Registry of Deeds. Work began on the project immediately thereafter. On October 15, 1997, defendant Barberry Homes, Inc. purchased the subdivision property from the Trust.
Barberry Homes completed the wetlands replication work during the summer and fall of 1998. On January 15, 1999, Barberry Homes’ engineer notified DEP that the work was complete, but requested a two-year extension so as to allow for the two-years’ growth that was necessary to obtain the required certificate of compliance. By letter dated March 29, 1999, a Section Chief in DEP’s Northeast Regional *140 Office took the position that, unless an injunction had been entered by the court preventing the work from going forward, the time for performing the work began on October 29, 1993, the date that all administrative appeals had been terminated. The Section Chief opined that, absent such an injunction or a prior extension, the Order had expired on October 29, 1996 and therefore no additional work could be done without filing a new application. On June 2, 1999 and again on September 3, 1999, Barberry Homes’ attorney wrote to DEP, citing the statute (G.L.c. 131, §40) prohibiting work from going forward until “all appeals periods have elapsed” and noting that the multiple appeals of the Order had not been exhausted until March 1996. The attorney again asked that the Order be extended to allow for the two-year monitoring period (noting that all the underlying replication work had been completed). There was no further response from DEP.
The presence of the replicated wetlands on Barberry’s property makes a portion (some 16,000 square feet) of plaintiff Allison’s property subject to state and local wetlands restrictions, as that portion of her property is now within 100 feet of a protected wetlands resource area.
Discussion 1. Nuisance
Plaintiff Allison contends that Barberry Homes’ placement of wetlands near her property constitutes a common-law nuisance, as it subjects her property to restrictions and requirements for the preservation of wetlands. Specifically, she cannot engage in certain activities within 100 feet of those replicated wetlands without first obtaining permission from the Town’s Conservation Commission, and she contends that the applicability of those requirements interferes with her use of the property and decreases its value. Since Barberry Homes was the creator of the nearby wetlands that now bring her property within the ambit of wetlands regulation, she contends that Barberry Homes is liable for creating a “nuisance.”
“The term ‘nuisance’ as a ground of liability usually results in confusion and frequently is a method of avoiding precision in analysis.” Delano v. Mother’s Super Market, Inc., 340 Mass. 293, 297 (1960).
There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word' “nuisance.” It has meant all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition. New terms have afforded so excellent an illustration of the familiar tendency of the courts to seize upon a catchword as a substitute for any analysis of a problem; the defendant’s interference with the plaintiffs interests is characterized as a “nuisance,” and there is nothing more to be said.
Prosser & Keeton, Law of Torts, 5th Ed. (1984), §86, p. 616-17 (citations omitted). Plaintiffs resort to a theory of “nuisance” as a means of recovery against a neighbor for the burdens imposed by state and local environmental regulations is a novel extension of the already confused jurisprudence surrounding that tort.
In all other nuisance cases, the defendant’s conduct has itself been the source of some unpleasant sensation to persons on plaintiffs property or has done physical damage to plaintiffs property. The tort of nuisance has been predicated on such things as the emission of noise, odors, fumes, and/or vibrations. See Malm v. Dubrey, 325 Mass. 63 (1949) (noisy freight terminal); Pendoley v. Ferreira, 345 Mass. 309 (1963) (smell from a piggery); Proulx v. Basbanes, 354 Mass. 559 (1968) (noise, fumes and vibration from laundry). Nuisance has also sometimes taken on aspects of trespass, where defendant’s conduct has caused some object(s) to come on to plaintiffs property. See Maynard v. The Carey Construction Co., 302 Mass. 530 (1939) (cockroach infestation coming from abandoned site); Hennessy v. Boston, 265 Mass. 559 (1929) (baseballs from playground); Kurtigian v. Worcester, 348 Mass. 284 (1965) (limb from dead tree).
Here, there is nothing noxious, unpleasant or damaging about the replicated wetlands on Barberry Homes’ property — they emit no noise, odors, fumes, dust, dirt, bright lights, flying objects, etc. The sole “interference” with plaintiffs property stems from government regulation that is designed to preserve wetlands. Ironically, it is the very fact that wetlands are a precious resource — not a “nuisance” — that has led state and local authorities to protect them. Plaintiff can point to no case where a theory of nuisance has been based on the presence of a desirable resource that subjects plaintiffs property to some restriction so as to preserve that resource, and this court is reluctant to subject persons to liability for “nuisance” merely because they construct or maintain some form of desirable resource that deserves protection. (For example, the presence of some historic site or historic building may lead to some restrictions on neighboring property so as to preserve or enhance the surrounding area, but one would not characterize the preservation of such a historic site as an actionable “nuisance.”) Here, it is the very fact that wetlands are of great environmental value that has led to restrictions so as to protect them. Those restrictions do not transform desirable wetlands into an actionable “nuisance.” Plaintiff points to no case law (from Massachusetts or any other jurisdiction) that stretches the law of nuisance to such facts, and this court is unwilling to confound further the already amorphous concept of “nuisance” in the absence of appellate guidance.
2. Government license
Even assuming that Allison’s theory of nuisance were otherwise viable, Barberry Homes rightly points out that its replication of wetlands in the two locations *141 near Allison’s property was done pursuant to the exact specifications set forth in DEP's Superseding Order of Conditions. Where the government has expressly authorized the challenged activity or conduct, it is not actionable even if it would, absent such authorization, constitute a nuisance. See Hub Theatres, Inc. v. Massachusetts Port Authority, 370 Mass. 153, 156 (1976) (where expansion of airport was authorized by legislature, planes flying out of that airport were not an actionable nuisance); Czapski v. Sun Oil Co., 303 Mass. 186 (1939) (where gas station had a license, “plaintiff cannot restrain as a nuisance the doing in a-reasonable and careful manner of the very act licensed”); Strachan v. Beacon Oil Co., 251 Mass. 479, 487 (1925) (“if the licensee has complied in all respects with the terms, what he does thereunder cannot be considered a nuisance or be restrained, even if without such licenses the acts done would be a nuisance”); Sawyer v. Davis, 136 Mass. 239, 241-42 (1884) (where municipal ordinance allowed ringing of factory bell, the ringing that had previously been found a nuisance was no longer actionable). Compare Marshall v. Hollbrook, 276 Mass. 341, 346-47 (1931) (although license to do a particular activity precludes an action in nuisance based on that activity, zoning regulation is not the equivalent of a license).
Here, DEP expressly authorized the creation of the two areas of replicated wetlands in the precise location that Allison now wishes to challenge as a “nuisance.” Allison points to no deviation from the specifications set in the Superseding Order of Conditions, no deviation in the location or size of the wetlands, and no form of nuisance from the construction activity involved in creating the wetlands. Where Barberry Homes has done only that which its license permits, the above cases hold that Barberry Homes can not be liable for nuisance, even if the construction of the wetlands without such a permit would be an actionable nuisance.
Allison seeks to avoid summary judgment on this issue by arguing that the actual placement of the wetlands was proposed by the Trust (Barberry Homes’ predecessor in interest), that DEP merely adopted that proposed placement, and that the placement itself was not “reasonable" because there were other alternative locations for the wetlands replication that would not have placed them so close to her own property. In making this argument, Allison relies on the following language from Hub Theatres:
The manner in which a business or activity which has been legislatively sanctioned may be conducted, however, is not without limitations. Rather, it is “subject always to the qualification that the business must be carried on without negligence or unnecessary disturbance of the rights of others.” The plaintiffs have not alleged that the Authority has been negligent in its activities at Logan or that such activities have been unreasonable or unnecessary.
370 Mass, at 156, quoting Sawyer v. Davis, 136 Mass. 239, 242 (1884). Allison argues that the above-quoted language allows her to contest the “reasonableness” and the “necessity” of the placement of the wetlands replication, notwithstanding DEP’s approval of that placement in the Superseding Order of Conditions.
Allison’s argument misapplies the principle discussed in Hub Theatres. A license to conduct an activity (e.g., to fly airplanes out of a particular airport) is not a license to conduct that activity in a negligent manner or in a manner that unnecessarily disturbs neighbors’ interests. That limitation, however, does not mean that disgruntled neighbors may, under a nuisance theory, reopen the underlying agency proceedings that led to the issuance of the license to see whether, with hindsight, the license terms could have been crafted differently. Nothing in Hub Theatres allowed plaintiffs to review, under the rubric of a common-law claim for nuisance, whether the authorizing body failed to consider other alternatives for the airport, or whether the airport itself had failed to put forth some different proposal that would have done less harm to plaintiffs’ interests. Challenges to the wisdom or propriety of an agency’s decision must be brought before the agency and addressed in any judicialreview of the agency’s decision. The law of nuisance is not a mechanism for disturbing an agency decision that has long since become final, and nothing in Hub Theatres suggests otherwise.[1]
Here, the fact that the prior owner may, back during the proceedings before DEP, have been able to propose some other location for the replicated wetlands does not make it “unreasonable” for Barberry Homes (an entity that had no involvement in what proposals the Trust made to DEP) to construct the replicated wetlands in the location that DEP ultimately approved. Once issued, the Superseding Order of Conditions did not allow the Trust or Barberry Homes to move the replicated wetlands to some other location on the property.[2] The license specified. exactly where the replicated wetlands were to be. That that location may, in the first instance, have been suggested by the prior owner does not change the fact that that is the location that DEP approved. The doing of precisely what DEP approved in the Superseding Order is not a nuisance, without regard to the thought process by which DEP gave that approval.
Allison also argues that the Superseding Order does not protect Barberry Homes because of the Order’s provision that it “does not grant any property rights” and “does not authorize any injury to private property or invasion of private rights.” That statement in the Order’s General Conditions does not take away from the fact that the Order permitted the owner to construct the replicated wetlands in the precise location that Allison now challenges. Rather, that statement is designed to prevent any claim that the Order authorized some form of trespass or physical damage to *142 neighboring property. The Order was a license to do the project, but it did not grant the owner any easement, right of access, etc. onto anyone else’s property. For example, if Barberry Homes’ construction activities had trespassed on Allison’s property, or had created excessive noise, dust, dirt, odors, or fumes, nothing in the Order would exempt Barberry Homes from liability for ordinary trespass or ordinary nuisance. That statement in the Order did not change what the Order had, by its express terms, allowed the owner to do — i.e., to place the replicated wetlands near the boundary of Allison's property.
3. Expiration of permit
Allison further argues that the Order confers no license on Barberry Homes because, Allison contends, it expired back in October 1996. Allison’s reading of the Order is in error. Allison acknowledges that the three-year period in which to perform the work did not start to run while appeals were pending, but she contends that that tolling is limited to administrative appeals within DEP and does not extend to appeals in court. The General Conditions of the Order provided that no work was to be done until “all administrative appeal periods have elapsed or, if such an appeal has been filed, until all proceedings before the Department have been completed.” However, the Special Conditions of the Order extended that prohibition on work until “all appeal periods have elapsed and this Superseding Order of Conditions has been recorded.” The statute (G.L.c. 131, §40) similarly provides that no work is to commence until “all appeals periods have elapsed.” Neither the Special Conditions nor the statute limit the term “appeal period” or “appeals period” to administrative appeals. Logically, they include all forms of “appeals,” including judicial review. To interpret the term otherwise would grant every opponent of every project a guaranteed method for preventing a project from going forward, as, by the mere filing of successive appeals in court, an opponent could easily “run out” the three-year time period set by DEP’s standard Order.[3]
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendant Barberry Homes, Inc.

It would be particularly problematic to allow such a misuse of the law of nuisance in the present case. The DEP Order went through not only its own protracted agency proceedings and appeals, but also through two and a half years of litigation in court. At no time during those proceedings, appeals and litigation did Allison seek to intervene or otherwise voice the objections she now seeks to raise. In using the law of nuisance to try and litigate the issue of whether there were other alternative locations for the replicated wetlands that DEP should have considered, Allison is now seeking to reopen and relitigate an agency decision that, after lengthy litigation, became final back in March 1996.

Indeed, Barberry Homes could not move the replicated wetlands to some other location without filing a new notice of intent, completing proceedings before the Commission, going through DEP appeals, and then again surviving any court challenges. Ironically, what Allison claims is the undue burden on her property that makes these replicated wetlands a “nuisance” is the fact that she would have to go to the Commission, DEP, etc. if she wanted to make any alterations on that part of her property that is now subject to wetlands regulation. If that is an unreasonable burden for her do bear, it is equally unreasonable to inflict such a burden on Barberry Homes, particularly when Barberry Homes had no role in proposing the wetlands location that DEP approved back in 1992.

Based on the March 29, 1999 letter from a Section Chief at DEP, Allison also contends that DEP itself is of the view that this Order expired on October 29, 1996, making the entirety of Barberry Homes’ work at the site unlawful. A more careful review of DEP’s actions makes clear, however, that this is not DEP's position. DEP conducted a site visit at Green Hill Estates on November 20, 1996 and issued a Water Quality Certificate for the project on January 2, 1997. DEP would not be visiting the site or issuing such a Certificate for the project if it were of the view that the underlying Order had already expired. Barberry Homes has also submitted internal DEP correspondence (to DEP's General Counsel) opining that the Order “is good for 3 years from the court decision.” Finally, despite DEP’s full awareness that Barberry Homes performed the work after October 29, 1996. there has been no enforcement action of any kind from DEP on account of any alleged unlawful activity at the site. While this court must show considerable deference to DEP’s interpretation of its own Orders, regulations and statutes, DEP’s actions (and its internal correspondence) are consistent with this court’s view that the three-year time period did not begin to run until all appeals, including court appeals, were exhausted.