## ANSON G. STANCHFIELD *vs.* CITY OF NEWTON.

Middlesex. March 9. — June 29, 1886. W. ALLEN & HOLMES, JJ., absent.

In an action of tort against a city for flooding the plaintiff's land, the plaintiff's evidence tended to show that the defendant constructed a drain along a street, and thence through a private way to a catch basin near the rear of the plaintiff's land; that the object of the drain was to carry off surface water, a portion of which naturally ran away from the plaintiff's land; that in the rear of this land was a small brook or ditch; that the water in wet seasons overflowed the catch basin, rose to the surface of the ground, ran into the brook, and did the injury complained of; and that the ditch or brook ran under a street through a culvert which was insufficient in size and choked up, and thereby water was backed upon the plaintiff's land. The evidence for the defendant contradicted the facts and causes of damage alleged by the plaintiff. The plaintiff asked the judge to instruct the jury that the defendant could not lawfully collect water not naturally coming near the plaintiff's land, and, conducting it by an artificial channel, precipitate it upon his land; that, if the ditch was a natural watercourse, the defendant was bound to make a suitable culvert for it under the street, for the passage of water which might naturally come there or be brought there by the defendant's acts; that, if the culvert had been maintained by private persons for more than twenty years, it was the duty of the defendant to see that it was not obstructed, even if the waters were not those of a natural stream. The judge declined so to rule, and instructed the jury that the defendant had no right to go beyond the limits of its highways for the disposal of surface water, without the permission of the adjoining proprietors; that, if the owners of the private way assented, the defendant might place the drain therein, and, with the assent of the owners of the land, conduct the water to the ditch and culvert, and the plaintiff could not complain unless he was a riparian proprietor on the brook; that, if the plaintiff was not such proprietor, he could not complain that the brook was so interfered with that the water which flowed into it could not flow out of it; and that, if the defendant improperly constructed the drain, and so negligently maintained it, either by itself or in connection with the culvert, that the plaintiff sustained an injury, he could recover. *Held,* that the plaintiff had no ground of exception.

If the testimony of a witness is contradicted, no exception lies to the refusal of the judge to instruct the jury what their verdict should be if they should believe the testimony of the witness to be true.

No exception lies to the refusal to give an instruction in the language requested, if it is given in substance.

Mere surface drainage over one tract of land to another, through a ditch, does not constitute a watercourse.

In an action, begun in the fall of 1882, for an injury occasioned by flooding the plaintiff's land in the spring of 1876, and in 1877 and 1878, evidence of the flowage or damage done in the spring of 1876 is properly excluded, the claim being barred by the statute of limitations.

TORT for injuries sustained by the plaintiff, alleged to be caused by acts of the defendant, whereby the plaintiff's land,

cellar, and kitchen were flooded in the spring of 1876, his land in 1877, and his land, cellar, and kitchen in 1878. Writ dated October 10, 1882.

At the trial in the Superior Court, before *Brigham*, C. J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion.

*E. W. Cate*, for the plaintiff.

*W. S. Slocum*, for the defendant.

DEVENS, J.  The plaintiff sought to recover upon two distinct grounds.  First, that, being a riparian proprietor upon the brook, watercourse, ditch, or drain, (for it is called by all these names,) which flowed in the rear of his premises, he was entitled to the natural flow of water therein, and that such flow had been greatly increased in volume, and rendered foul, by the acts of the defendant; and, secondly, that, even if not a riparian proprietor, he was injured by the imperfect construction of the drain through Maple Place, by which the water from Church Street was intended to be conducted to the brook, and also by the defective preparation of the line of the brook, considered with reference to its channel, the means of discharge from it by a culvert, and the drainage brought to it, the land of the plaintiff in the vicinity having been overflowed, and injury to him thus occasioned.

There was evidence on behalf of the plaintiff, that a drain-pipe had been extended along Church Street in the city of Newton for some seven hundred feet, whose only object was the collection of surface water; that the natural drainage of a portion of the territory was in a different direction from the plaintiff's premises; and that in the rear of the plaintiff's premises was a small brook or ditch.  Whether it was a natural watercourse or not was in dispute, and also whether it was entirely outside of and beyond the plaintiff's premises.  There was further evidence that the drain in Church Street was connected with another drain-pipe, through which its waters passed, one hundred and eighty feet in length, that extended through Maple Place, a private way, by leave of the proprietors thereof, and terminated in a catch basin, from which water passed by overflow to the plaintiff's premises; that this drain-pipe, at the time of the injuries of which the plaintiff complains, did not

extend to the brook or ditch; and that, the only connection being by a discontinued blind drain of rubble-stone and dirt, the water by reason of the flowage in rains or wet seasons rose to the surface, and spread over the plaintiff's land.

There was further evidence that the land of the plaintiff had been flooded by the overflow of the brook or ditch, and that there was no sufficient outlet for the same; that the only outlet provided was by a culvert under Centre Street, which was insufficient, and which had also been permitted to become choked up; that, further, there was a drainage of surface water, not naturally coming there, near Centre Street; and that thus back water had been thrown upon the plaintiff's land.

The evidence on behalf of the defendant more or less contradicted the said facts and causes of damage alleged by the plaintiff.

The second, third, and fourth requests for instructions were, in substance, that the defendant could not lawfully collect from a great extent of country water not naturally coming near the plaintiff's land, and, conducting it by an artificial channel through a private way, precipitate it upon the rear of his lot, with force and volume increased by the mode in which it was conducted and the extent of country from which it was drawn.

The seventh, eighth, and ninth requests for instructions were, in substance, that, if there was a natural watercourse or ditch, running in the rear of the plaintiff's premises, which passed across Centre Street, the defendant was bound to make there a suitable culvert for the passage of the water which might naturally come there, or which might be brought there by the defendant's acts and doings, as by the construction of a drain through Maple Place, and further to provide that it should not be obstructed; that, if there was a culvert maintained by private persons for more than twenty years, it was the duty of the defendant to see that it was not obstructed, even if the waters were not those of a natural watercourse; and also that, if by neglect in these respects the water overflowed or was thrown back upon the plaintiff's premises, the defendant was responsible.

These last requests are apparently intended to present the inquiry as to the rights of the plaintiff, even if it be assumed that he was not a riparian proprietor. The requests do not

clearly distinguish between the two grounds upon which the plaintiff was entitled, upon the evidence, to present his case, and it would have been impossible to give them precisely as asked. In the instructions as given, this distinction was carefully made by the presiding judge, and it is to be considered whether, as given, they accurately and sufficiently cover the case as presented.

The first portion is devoted to considering the rights of the plaintiff as a riparian proprietor upon the brook. They hold that the city has no right to go beyond the limits of its highways, without the permission of the adjoining proprietors, for the disposal of its surface water; that, with the assent of the owners of Maple Place, it might conduct the surface water by a drain therein, and, with the permission of the owners of the land through which the watercourse or ditch ran, might lawfully conduct such drain into the ditch, and so on to the culvert; that of all these acts the plaintiff would have no right to complain, unless he was a riparian owner, and thus had a right to the regular flow of the waters of the brook. They conclude by saying: "If you find that the plaintiff had no right in the brook as the owner of one of its banks, or because it was the boundary of his estate, and the city of Newton made a drain to carry off its surface water upon Church Street, continued it into Maple Place by the permission of the owners of Maple Place, and continued it then to Centre Street by permission of the owners of the land through which the brook passed, then the plaintiff cannot complain and make it a cause of injury that the brook or watercourse was so interfered with that the water which flowed into it could not flow out of it."

These instructions relate only to the claim of the plaintiff as a riparian proprietor, and show that, if not so, he is not entitled to complain of mere interference with the waters of the brook, or increase in their volume. They are irrespective of the rights which the plaintiff had as a landowner whose lands were remote from the brook or not immediately bordering on it, which are dealt with in the subsequent sentence. While they are negatively expressed, and state in what cases a party cannot recover, unless a riparian proprietor, for mere interference with the waters of the brook, that he may do so for this, if a riparian

proprietor, is clearly shown, especially when they are taken in connection with the earlier portion of the charge, which states that, if the plaintiff was a riparian proprietor, " he had rights in that watercourse which gave him a cause of action against any person who prevented the flow of water in that watercourse, or the flow of water from his land by that watercourse, or befouled the water of that watercourse."

These instructions give the plaintiff all that he was entitled to upon this part of the case. Even if we assume the contention of the plaintiff, that the defendant had not a right to collect the water from a larger area than was naturally drained by way of Church Street, of which there was some evidence, or then to conduct it by and through the lands immediately adjoining the highway into the brook, these acts of themselves afford no ground of complaint to any one except the owners of the land or riparian owners of the brook.

If, in doing these acts, injury is done to others than riparian proprietors by the defective constructions adopted or defective preparations made, so that their lands are overflowed or nuisances to them are created, a different ground of action is presented, which is dealt with in the subsequent part of the instructions. These were, " If — and this is entirely irrespective of any question of his rights in the brook — the city so improperly constructed this drain through Maple Place or the line of the watercourse, and so negligently kept it in repair and maintained it, either considered as a thing by itself, or considered in its connection with Centre Street, the culvert under it, and the drainage of land in that direction towards it, and did these things to the injury of the plaintiff, he might recover, not because he has any right in the brook, but because the city, in disposing of their water, lawfully, as long as it was properly done, had acted unlawfully and wrongfully in the construction and maintenance of their drain, and in the repair and maintenance of it."

These instructions certainly entitled the plaintiff to recover if the drain through Maple Place was not properly constructed by being directly connected with the brook, but emptied into a cesspool which did not permit the waters to percolate through with sufficient rapidity, or was insufficient to contain them, so that they spread over the plaintiff's land in the vicinity to his

injury, or was so negligently kept in repair and maintained that the same result followed. They permitted him also to recover if the line of the watercourse was thus improperly constructed or negligently maintained. The plaintiff contended, that the culvert was insufficient to carry off the water naturally coming to the brook, or which might be brought there by the defendant, and that, whether this ditch was or was not a natural watercourse, the defendant must maintain it of sufficient size to carry off the water; and if insufficient, or permitted to be obstructed so that the water was flowed back upon the plaintiff's premises to his injury, he was entitled to recover therefor. The instructions do not in terms state that the culvert should be sufficient to carry off the water there naturally flowing, and that brought into the brook; but the expression "the line of the watercourse" must have been understood by the jury as meaning the whole of the line by which the water was to be carried off, including the culvert. The jury were told that this must be considered "in its connection with Centre Street, the culvert under it, and the drainage of land towards it." The plaintiff having offered evidence that there was a drainage of water near Centre Street not naturally coming there, which might of course swell the volume of water to be there disposed of, this fact was to be regarded in determining whether it was a proper construction. The jury were further told that, while the city might dispose of its surface water, so long as it was properly done, any improper construction occasioning injury to the plaintiff would be a wrongful act, for which he could maintain an action. That the line of the watercourse would be improperly constructed if not provided with proper means of discharge, needs no argument, and this is contemplated by the instruction which requires it to be considered in connection with the culvert, etc. The whole of the instructions are not given in detail. They do not take up, except in a general way, the various facts upon which the plaintiff contended that the defendant was guilty of negligence in regard to its arrangement for disposing of the water brought into the brook. It is quite probable that, at the trial, the remarks of the judge were amplified, and applied to each of them. But, as stated, they fully cover these facts in a manner which must have been comprehended.

The exceptions we have considered should therefore be over-ruled. Those that remain may be more rapidly disposed of. The first request singles out the testimony of a single witness, whose evidence was contradicted, and requests an instruction to the jury as to its effect. This might properly be refused. *Bailey* v. *Bailey*, 97 Mass. 373. *McDonough* v. *Miller*, 114 Mass. 94.

The fifth request was given in substance, as the plaintiff was permitted to recover if, as he alleged, by reason that the drain through Maple Place did not connect with the brook, and thus the water conducted by it to the cesspool spread over his land to his injury.

In answer to the sixth request, the presiding judge correctly defined a watercourse. *Parks* v. *Newburyport*, 10 Gray, 28. *Dickinson* v. *Worcester*, 7 Allen, 19.*

The tenth request was as to the effect of the negligent construction or maintenance of the drain by the defendant, and was fully considered with the seventh, eighth, and ninth requests.

The question whether the plaintiff could be permitted to prove flowage or damage in the spring of 1876, or whether his claim therefor was barred by the statute of limitations, is not important in the view we have taken of the other exceptions, as the evidence relied on was of a similar character; but the evidence offered was properly excluded.

*Exceptions overruled.*

---

* The sixth request for instructions was as follows: " To constitute a watercourse in law, it is not necessary that it should at all seasons of the year contain water; but if it has a regular channel and well-defined banks, discharging itself into some other stream or body of water, it is sufficient in law to constitute it a watercourse, though the quantity be very small and the flow not constant."

The instruction of the judge was as follows: " To constitute a watercourse, water must usually flow in a certain direction, and by a regular channel, with banks and sides. It may be dry at times, but it must have a well-defined and substantial existence. To constitute a watercourse, there must be something more than a mere surface drainage over one tract of land on to another, occasioned by unusual freshets or other extraordinary causes. The flowing, through a ditch, of water which has accumulated from rains, or the melting of snow, or the under-drainage of land, would not constitute a natural watercourse."