LIONEL J. PROULX & another *vs.* JOHN G. BASBANES & another.

Middlesex.     April 3, 1968. — June 26, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Nuisance. Damages,* For injury to building, For personal injuries, From nuisance.

Findings by a master in a suit in equity as to vibrations in the home of the plaintiffs from early morning to late evening over a two year period, and as to the physical damage to their home caused by the vibrations, which emanated from machines in a laundry building on adjoining premises on which the defendants operated a laundry and dry cleaning business, rendered proper the entry of a final decree enjoining the defendants from so conducting their business as to continue the private nuisance created, awarding damages for the injury to the plaintiffs' home, and awarding damages for personal injuries to the plaintiffs, who were persons of ordinary sensibilities but on occasion had been rendered "sick, nervous and ill" by the vibrations, although no expert medical testimony was introduced.

BILL IN EQUITY filed in the Superior Court on March 31, 1966.

The suit was heard by *Moynihan,* J., on a master's reports.

*George J. Basbanes* for the defendants.

*James D. O'Hearn* (*Francis P. Cogger* with him) for the plaintiffs.

REARDON, J. The plaintiffs are residents and owners of a home in Lowell. The defendants own and operate a

laundry and dry cleaning business on land adjoining that of the plaintiffs. The suit is brought to enjoin the defendants from so operating their business as to cause distress to the plaintiffs from noxious fumes, noises of various descriptions attendant upon the use of motor vehicles, and the employment of laundry equipment which causes vibrations resulting in injury to the plaintiffs' home and persons. The plaintiffs also seek damages.

The matter was referred to a master who took a view, heard the parties and their witnesses, and filed a report. The report was recommitted to him for certain further findings and for a report of the evidence on which he based his findings on property damage and personal injury. An interlocutory decree confirmed his reports and a final decree entered enjoining the defendants from so conducting their business as to cause vibrations or noises affecting the property of the plaintiffs and their use and enjoyment thereof, and awarding them the sum of $4,000 with interest for damage to their real property, $1,200 with interest to Lionel J. Proulx, and $2,400 with interest to Rita M. Proulx for personal injuries, together with a sum for costs. The defendants appeal from the final decree.

The master found that the plaintiffs purchased their home in 1962 and that the defendants had acquired their premises in 1954. The defendants' use of their land for a steam laundry or dry cleaning plant is a permitted use under the Lowell zoning ordinance. After buying their residence the plaintiffs engaged in extensive renovations which the master described. They occupied their home in June, 1963, and soon afterward became aware of vibrations and rumbling noises which ceased when a fire occurred in the defendants' premises and resumed when the laundry after a period of time returned to its normal operation. These vibrations would commence as early as four or five o'clock in the morning and continue as late as nine o'clock in the evening. The vibrations were caused by improperly loaded washer extractors in the defendants' laundry building. These machines revolved at a maximum of 650 revolutions a

minute and were four in number. The vibrations caused mortar to fall from the cellar foundation of the plaintiffs' house and from the fireplace. Cracks appeared in the cellar walls of the building. Mopboards pulled away from the walls and door frames were forced out of line to the point where doors would not close. Upstairs and downstairs cabinets pulled away from ceilings and walls. Windows were loosened. Cracks appeared in floors. Caulking compound fell from storm windows and grout fell from bathroom tiling. In many corners the plaintiffs' house started to come apart. The nuisance thus created was compounded by the emanation of fumes and unpleasant odors from the laundry and there was noise from the use of the defendants' motor vehicles, although the master found no damage to the plaintiffs from these annoyances. He did find, however, that the vibrations which continued day by day from April 1, 1964, to March 31, 1966, profoundly disturbed the plaintiffs, who were persons of ordinary sensibilities, and rendered them on occasion "sick, nervous and ill." The plaintiff Rita Proulx constantly took medication to reduce her nervous condition and to sleep. A large number of witnesses, officials of the city and others, gave testimony reported by the master of the manner in which the plaintiffs' entire house vibrated. The dishes rattled. "[C]offee would . . . spill from cups on the table; . . . [m]ilk in glasses on the table would have waves in it." In short, the master made it quite clear that the effect of the use of the extractors created devastating results inside the plaintiffs' house.

The defendants argue that there is no medical testimony establishing a causal connection between the vibrations and the personal injuries for which damages were awarded, that any personal injury sustained was solely "mental anguish," which is not compensable, and that the master's report contains no subsidiary findings upon which to base the award for property damage.

1. We consider first the injunction which in the circumstances related above appears to be entirely proper. An undoubted nuisance was visited upon the plaintiffs by the

operation of the laundry and dry cleaning business and they are entitled to relief from the condition which the master found to exist. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 489. *Fenton* v. *Quaboag Country Club, Inc.* 353 Mass. 534. The findings of the master, who took a view, will be accorded every reasonable presumption. *Stewart* v. *Hanreddy,* 212 Mass. 340, 341.

2. We find no fault in the sum awarded for property damage. This damage was seen by the master and described in detail in his reports. Assembled before him were sufficient facts to enable him to assess the injury to the plaintiffs' home. It would appear that the master endeavored to set a figure adequate to enable the plaintiffs to repair damage caused by the nuisance. The application of his judgment to this assessment is not so speculative as to cause us to return this matter to him for additional findings. See *Belkus* v. *Brockton,* 282 Mass. 285, 287–288.

3. We are not inclined to vary in any respect the award for personal injuries. The master heard evidence from Lionel Proulx that the "vibrations were a deafening sound which interfered with his hearing," and found that he was caused to be nervous and upset. His wife was caused to lose sleep and weight, became nervous and resorted to constant medication "to reduce her nervous condition." We cannot say that there was not sufficient before the master to justify the conclusions he reached on the injury to the plaintiffs. He passed upon the same problem which frequently confronts courts and juries in their determination of the extent of personal injury. Expert testimony was not required to show that the physical ills of which the plaintiffs complained might be expected as a result of the defendants' operations. *Lovely's Case,* 336 Mass. 512, 515. *Gilman* v. *Metropolitan Transit Authy.* 345 Mass. 202, 205. See *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8; *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447; *Colangeli* v. *Construction Serv. Co.* 353 Mass. 527.

*Decree affirmed.*