TREDWELL A. HARRISON & others *vs.* TEXTRON, INC. (and five companion cases).

Norfolk.    November 7, 1974. — April 30, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Zoning,* Validity, Access road. *Way,* Public: establishment. *Nuisance.* *Limitations, Statute of.* *Damages,* From nuisance, Counsel fees. *Practice, Civil,* Action transferred to District Court, Declaration, Demurrer.

The decision of this court in *Harrison* v. *Braintree,* 355 Mass. 651 (1969), did not invalidate, but indicated as valid, that portion of an amendment of the town's zoning by-law permitting use thereafter of lands in a residential district as ways for access to and egress from land in any other zoning district subject to approval by the board of appeals. [543]

A finding in a proceeding that certain use of ways on both sides of residential property was unreasonable for zoning purposes did not require a similar finding with respect to another way considerably farther from such property or preclude the local zoning board of appeals from granting a special permit for use of the other way. [546]

On an appeal from the final decree in a suit in equity, disapproval
by the trial judge, pursuant to S.J.C. Rule 1:02, of a designation
by the appellant of 1,400 pages of transcript in such suit and five
companion cases consolidated for trial, as well as all the exhibits,
was not an abuse of discretion. [546-547]

An establishment of an access road to an industrial plant as a public
town way would not be rendered invalid merely because a nearby
landowner would be adversely affected by the way. [547]

A declaratory decree might be sought in conjunction with a petition
for a writ of certiorari challenging the validity of an establishment
of a public way. [548]

Use of a public way is not restricted to the purposes permitted in the
zoning district in which the public way lies. [549]

A public way through a residential zoning district providing access to
an industrial plant in a town was not restricted in its use to res-
idential purposes where it had been approved by the zoning board
of appeals pursuant to a provision of the zoning by-law permitting
public or private ways providing such access subject to approval of
the board. [549]

In several actions of tort for nuisance arising out of noise, dust, vi-
brations, lights caused by traffic going to and from the defendant's
plant on access roads near property of the plaintiffs, the trial judge
correctly ruled and instructed the jury that the plaintiffs were not
entitled to damages sustained more than two years prior to the
commencement of the first action. [552]

Upon transfer of an action to a District Court for trial under G. L.
c. 231, § 102C, followed by a finding for the defendant, a decision
by the Appellate Division in favor of the plaintiffs, a finding for
the plaintiffs by the District Court judge in accordance with the
decision of the Appellate Division, and retransfer of the action to
the Superior Court, it was the duty of the Superior Court judge to
review the decision of the Appellate Division, and, upon determin-
ing that that decision was erroneous in law, the Superior Court
judge properly excluded from evidence the finding of the District
Court judge in favor of the plaintiffs. [552-553]

Evidence of counsel fees incurred by the plaintiffs in actions of tort
for nuisance arising out of the defendant's use of roads near the
plaintiffs' home for access to its industrial plant and in several re-
lated actions was properly excluded by the trial judge as a non-
compensable element of damages. [554-555]

In actions of tort for nuisance arising out of the defendant's use of
roads near plaintiffs' home for access to its industrial plant, the
trial judge properly declined to instruct the jury that the plaintiffs
could recover for their loss of comfort and well being in addition
to the loss of rental value of their property during the continuance

of the nuisance where there was no evidence of physical injury or mental or emotional harm to the plaintiffs.  [556]

In an action of tort, demurrers were properly sustained as to several counts containing only conclusory allegations that the defendant corporation conspired with town officials and others to deprive the plaintiffs of their civil rights.  [556-558]

THREE ACTIONS OF TORT.   Writs in the Superior Court dated November 18, 1966, November 15, 1968, and November 15, 1970, respectively.

PETITION for writ of mandamus filed in the Superior Court on February 9, 1965.

BILL IN EQUITY filed in the Superior Court on July 11, 1969.

PETITION for writ of certiorari filed in the Superior Court on July 31, 1970.

The cases were tried together before *Dimond, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Douglas A. Randall* for the plaintiffs.

*Jerome P. Facher* (*Evan Y. Semerjian* with him) for Textron, Inc.

*Dace J. Moore,* Town Counsel, for the Board of Appeals of Braintree.

WILKINS, J. The plaintiffs raise a variety of challenges to rulings and other determinations in several cases which relate to the use of residentially zoned land in Braintree for vehicular access to industrially zoned land.   The location and some of the parties are not new to us.

We first encountered this general subject in *Harrison* v. *Building Inspector of Braintree*, 350 Mass. 559 (1966), a mandamus action seeking enforcement of the town zoning by-law.   The petition raised the question whether "an owner of land in an industrial district may use lots of land in an adjacent residential zone as access roadways for its industrial plant."   *Id.* at 560.   We answered that

question in the negative and sent the matter back for trial, holding that demurrers to the petition should not have been sustained.

The mandamus action proceeded in the Superior Court, and in November, 1969, judgment was entered for the plaintiffs. When an appeal was argued here in March, 1971, the defendants asserted that the challenged access roads had been closed, making the mandamus action moot. We remanded the case to the Superior Court for a determination whether the order for judgment should extend to "other access roads across the residentially zoned areas on either side of the . . . [plaintiffs'] premises" and for consolidation with other related matters in the discretion of the Superior Court judge. At that time, the other proceedings which are now before us were pending and untried in the Superior Court in Norfolk County. A motion to consolidate the various cases was allowed, and, as will appear, they all were tried in March, 1971.

Following our 1966 opinion in the mandamus action, the town promptly undertook to rectify the problem of the inaccessibility of the industrial land under the town's zoning by-law. It adopted a zoning by-law amendment which added to the permitted uses in a residential district: "Access or egress ways, public or private, to or from land in any other district; subject to the approval by the Board of Appeals, however, on such ways established after the adoption of this amendment." The Harrisons challenged the validity of that zoning change and prevailed in the Land Court. We affirmed the Land Court judge's decision that the amendment was illegal in so far as it purported to validate existing ways. *Harrison* v. *Braintree*, 355 Mass. 651 (1969). Thus, the town's purported ratification of the existing access roads adjacent to the Harrisons' property was invalid. We stated, however, that "the provision for use of residentially zoned land for access to other zones with the approval of the board of appeals" was valid. *Id.* at 655.

Following our opinion in this second case, an application for a special permit was presented to the board of appeals in connection with a proposed new access road to be called Farm River Drive. The board of appeals granted a special permit in June, 1969. Three persons, including the Harrisons, appealed to the Superior Court from the decision granting that special permit. That appeal was one of the cases pending in the Superior Court in Norfolk County when we remanded the mandamus action in March, 1971.

A third case, which was also pending in the Superior Court in March, 1971, was the Harrisons' challenge to the town's purported acceptance of Farm River Drive as a town way. A town meeting in the spring of 1970, voted unanimously to accept the way as laid out by the selectmen. The selectmen thereafter voted to adopt an order of taking of an easement in Farm River Drive and awarded no damages in connection with the taking. Subsequent to that vote, but before the order of taking was recorded in the registry of deeds, a deed was recorded by which the owner granted the town an easement in Farm River Drive and purported to dedicate the road to the town as a public way.[1] The Harrisons filed a petition for a writ of certiorari and for declaratory relief challenging the validity of the layout of Farm River Drive as a town way.

In addition to these three cases which were pending against public officials in March, 1971, three actions for nuisance brought by the Harrisons were then pending in the Superior Court against Textron, Inc. (Textron), the owner of the industrial plant to which access was obtained over the ways in question.[2] These nuisance actions were commenced in November of 1966, 1968, and

---

[1] Farm River Drive as laid out by the selectmen and deeded to the town is identical to the road which was the subject of the special permit.

[2] In the Superior Court judge's findings, Textron was treated as the owner of these industrial premises, although legal ownership of the

1970, respectively, and were tried together in the Superior Court before a jury which returned verdicts for the Harrisons aggregating $7,050. Textron has not challenged the result reached in the Superior Court, but the Harrisons have presented exceptions to various rulings of the judge.

After the jury returned verdicts in the tort actions, the judge continued the consolidated proceedings to hear the mandamus action, the zoning appeal and the certiorari petition. He made careful and extensive findings of fact and rulings of law. He upheld the grant of the special permit to use Farm River Drive; he decided that the certiorari and declaratory relief petition should be dismissed because there was no material defect in the procedure by which Farm River Drive had become a town way and because the plaintiffs were not entitled to declaratory relief; and he concluded that the mandamus petition should be dismissed for mootness because the original access roads had been closed and because the new access road (Farm River Drive) was a valid town way and, alternatively, the subject of a valid special permit. Appropriate orders for judgment were entered in the mandamus and certiorari proceedings and a final decree was entered upholding the board of appeals in the zoning appeal.

We ordered direct appellate review of the plaintiffs' various appeals. We shall deal first with the cases involving public officials and then will consider the nuisance actions. Where necessary, additional facts will be set forth bearing particularly on the case under discussion.

premises seems to have been in someone else. We shall continue the practice in this opinion.

THE ZONING APPEAL.

The plaintiffs contend that the board of appeals lacked authority to grant a special permit for Farm River Drive. They argue that our decision in *Harrison* v. *Braintree,* 355 Mass. 651 (1969), invalidated the entire 1966 zoning amendment, including the right to obtain a special permit for a new access way across residential land to another zoning district. Our decision involved only that aspect of the by-law change purporting to validate existing ways across residential land to other zoning districts. As the opinion clearly states (655-657), it did not invalidate that portion of the by-law change allowing new access ways by special permit from the board of appeals. In fact, the opinion indicated that this latter provision was valid. (655).

The finding of the Land Court judge in *Harrison* v. *Braintree, supra,* that the use of the ways on either side of the Harrisons' property was unreasonable, does not compel a similar finding in these circumstances. Farm River Drive is considerably farther from the Harrisons' property than was either of those ways. The plaintiffs make no other challenge to the judge's finding that the new access road is not detrimental or offensive to the neighborhood and that it does not materially affect the use and enjoyment of the plaintiffs' property.[3]

The only additional issue in the zoning appeal involves the plaintiffs' exception to the judge's disapproval of the plaintiffs' designation of the record on appeal. The plaintiffs designated "[a] transcript of all the evidence

---

[3] The Land Court decision that the zoning amendment was invalid in the circumstances of that case did not render the amendment invalid in all respects. This is implicit in our opinion in *Harrison* v. *Braintree, supra.* There we recognized that the Land Court decision was erroneous in stating that the provision for access to other zones with the approval of the board of appeals was invalid (655), although we affirmed the decision that the amendment was invalid (657).

adduced at the trial" and "[a]ll the exhibits introduced in evidence and those marked for identification only." In disapproving those designations, the judge relied on the requirements for designation of the record on appeal appearing in S.J.C. Rule 1:02, as amended, 353 Mass. 804 (1967). The transcript consists of over 1,400 pages of testimony, including evidence in all six of the cases consolidated for trial. There was no abuse of discretion in striking the plaintiffs' designation of all the evidence in all these cases. Moreover, in any event the plaintiffs' remedy was to print any matter so omitted as an appendix to their brief and to make an argument based on that material. See S.J.C. Rule 1:02 (6) (351 Mass. 732 [1967]). This the plaintiffs have not done.

## THE CERTIORARI PETITION.

Although the "Petition for Writ of Certiorari and Declaratory Relief" alleges a broad attack on the laying out and accepting of Farm River Drive, the plaintiffs argue only two points before us in connection with the judge's dismissal of that petition. They claim standing to challenge the town's action because the jury verdict in the third nuisance action determined conclusively that the plaintiffs were affected adversely by the existence of the public way. Secondly, they argue that they were entitled to a decree declaring that Farm River Drive was not validly laid out as a public way.

Even if the plaintiffs were affected adversely by the existence of Farm River Drive as a public way, the laying out, acceptance and taking of the new public way would not be rendered invalid thereby.[4] The plaintiffs make no

---

[4] The jury verdict does not compel a conclusion that the plaintiffs were affected adversely by Farm River Drive. During much of the period covered by the third nuisance suit, at least one other access road was open. The jury may have found that the plaintiffs were

other argument to us that Farm River Drive is not a valid public way.[5]

We come, then, to the rather academic question whether the plaintiffs are entitled to declaratory relief.[6] We see no impropriety in seeking a declaratory decree in conjunction with a petition for a writ of certiorari. Normally when a plaintiff's claim is rejected on the merits, a declaratory decree adverse to the plaintiff is entered rather than a decree dismissing the bill. See *Bettencourt* v. *Bettencourt*, 362 Mass. 1, 10 (1972). Here, assuming that there is an "actual controversy" between the plaintiffs and the town, the existence of which is a prerequisite of the plaintiffs' right to declaratory relief (G. L. c. 231A, § 1), in light of what we have said in this opinion, the plaintiffs have obtained a sufficient declaration on the subject. There is no need to remand this proceeding for a declaration of right in the Superior Court.

### THE MANDAMUS ACTION.

The judge was correct in concluding that a writ of mandamus should not issue commanding the town building inspector to enforce the zoning by-law against the use of access roads to the Textron property. By the time of the Superior Court trial of the consolidated cases,

---

harmed by the use of the other access roads (particularly one nearer their home) and not by the use of Farm River Drive. The size of the verdict in the third nuisance case in relation to the verdicts in the first two cases tends to support this view. The verdict in the third case was $450. The other verdicts were $4,800 and $1,800, respectively.

[5] Assuming that the plaintiffs are entitled to raise the point, the town's failure to appropriate funds for the taking cannot be a fatal defect where the landowner, as here, granted an easement as a gift.

[6] Any declaratory decree would declare Farm River Drive a valid public way.

the only access road in existence was Farm River Drive, and the original, improper driveways had been closed. The question as to these access roads was moot.

The plaintiffs argue, however, that even if Farm River Drive had attained the status of a public way, its use violated the zoning by-law because a public way is not exempt from the application of local zoning restrictions. This claim is contrary to the implication of our statement in *Harrison* v. *Braintree,* 355 Mass. at 656 (1969), regarding possible solutions to the inaccessibility, in a zoning sense, of the Textron premises. We said: "The town is not in a straitjacket. It may lay out public ways."

Although a municipality is subject to its own zoning regulations (see *Sellors* v. *Concord,* 329 Mass. 259, 262-263 [1952]; *Sinn* v. *Selectmen of Acton,* 357 Mass. 606 [1970]), we know of no authority for the proposition that a public way, laid out by municipal action, pursuant to statute, may be used only for purposes which are permitted in the zoning district in which the public way lies. The adoption of such a rule at this time would be both surprising and disruptive throughout the Commonwealth. If the issue were before us squarely, we would rule that the use of a public way is not restricted by local zoning provisions. Here, however, the use of Farm River Drive has been approved by the board of appeals under a by-law which on special permit allows "public or private" ways in residentially zoned land to be used for access to other zoning districts. Thus, the use of Farm River Drive for access to the Textron premises is permitted by the special permit.

Although the judge was correct generally in dismissing the petition for a writ of mandamus, the plaintiffs are entitled to those taxable costs which were allowed to them in the order for judgment entered in November, 1969, and such additional taxable costs, if any, as they may have incurred in opposing Textron's appeal which was heard here in March, 1971. The mandamus

proceeding should be remanded to the Superior Court for the entry of an appropriate order.

### THE NUISANCE ACTIONS.

We come finally to the plaintiffs' exceptions to various rulings of the judge in the three tort actions for nuisance. Certain circumstances relating to these actions must be set forth in order to present properly the various issues which are before us.

The first action against Textron was commenced by Mr. and Mrs. Harrison in November, 1966, alleging that the use of driveways on both sides of the plaintiffs' home for access to the defendant's factory was a violation of the zoning by-law; that the plaintiffs' property was diminished in value because of noise, dust, vibrations, lights and the loss of privacy resulting from the use of the ways; that the plaintiffs incurred expenses in an attempt to obtain relief from the effects of the use of the driveways; and that their losses and damages were "the direct result of the unlawful acts of the defendant in maintaining the nuisance of using these driveways."

This first case was tried in a District Court on transfer (G. L. c. 231, § 102C), resulting in a finding in December, 1968, that Textron's "use of its driveways did not constitute a nuisance." That decision was made before our decision in *Harrison* v. *Braintree, supra,* holding illegal the town's purported validation of access ways across residentially zoned land. The Appellate Division then reversed the finding for the defendant, on the ground that this court in *Harrison* v. *Braintree, supra,* had declared the use of the driveways unreasonable as matter of law. The Appellate Division also ruled that the plaintiffs were entitled to counsel fees incurred in prosecuting the mandamus action and the Land Court case. The Appellate Division ordered a new trial limited to damages. The District Court judge entered a finding

for the plaintiffs in the amount of $21,000, and the case was retransferred to the Superior Court for further proceedings.

The second nuisance action was commenced on November 15, 1968, and was founded on substantially the same allegations as the first nuisance action. This action, which was pending in the Superior Court until it was tried with the others in March, 1971, was not transferred to a District Court under G. L. c. 231, § 102C, and presents no question which is not common to the other nuisance actions.

The third nuisance action was commenced on November 15, 1970, and was more expansive than the earlier two actions. In addition to a count against Textron in tort for nuisance on behalf of Mr. and Mrs. Harrison, the declaration contained nuisance counts against Textron on behalf of each of the Harrisons' two children and counts on behalf of all four members of the Harrison family against Textron in "[t]ort for deprivation of civil rights and for conspiracy." These counts will be referred to hereafter as the "civil rights" counts.[7]

There are six issues before us with respect to the nuisance actions. (1) The plaintiffs object to the judge's ruling and instruction to the jury that the plaintiffs were not entitled to damages incurred more than two years prior to the commencement of the first nuisance action. (2) The plaintiffs excepted to the judge's ruling that the District Court judge's finding for the plaintiffs could not be admitted in evidence. (3) The plaintiffs object to the judge's refusal to allow any evidence of attorney's fees incurred by the plaintiffs to go to the jury. (4) The plaintiffs also object to the judge's refusal to instruct the jury that their loss of comfort and well-being was a separate element of their damages. (5) The plaintiffs chal-

---

[7] A "civil rights" count also was included against unnamed trustees of pension benefit trust funds, who were alleged to have engaged in the conspiracy.

lenge the action of the judge in directing verdicts for Textron on the minor plaintiffs' nuisance counts. (6) Finally, the plaintiffs except to the judge's ruling sustaining the defendants' demurrers to the "civil rights" counts. The judge's action was in effect a ruling that the "civil rights" counts did not constitute a cause of action. We will consider each of these six questions in order.

(1) The judge correctly ruled and instructed the jury that the plaintiffs were not entitled to damages sustained by them more than two years prior to the commencement of the first action for nuisance. *Prentiss* v. *Wood,* 132 Mass. 486, 489 (1882). *New Salem* v. *Eagle Mill Co.* 138 Mass. 8 (1884). *Stanchfield* v. *Newton,* 142 Mass. 110 (1886). See *Pierce* v. *Pickens,* 16 Mass. 470, 472 (1820), *Manning* v. *Woodlawn Cemetery Corp.* 239 Mass. 5 (1921), and *Proulx* v. *Basbanes,* 354 Mass. 559 (1968), where the principle was applied without discussion. In *Fenton* v. *Quaboag Country Club, Inc.* 353 Mass. 534 (1968), damages were allowed covering a period of thirteen years during which a nuisance continued, but the statute of limitations was not pleaded.[8]

(2) The judge properly excluded the District Court judge's finding for the plaintiffs, on the belief that the finding was based on errors of law apparent in the opinion of the Appellate Division. The perceived errors were that the Appellate Division (a) directed that the damages include counsel fees, and (b) ruled that the use of the access driveways constituted a nuisance as matter of law.

The plaintiffs argue that a Superior Court judge has no right to question the reasoning of the Appellate Division in these circumstances and that the finding was admissible automatically. They rely on the provision in

---

[8] The defendant's answer in the first action adequately raised the statute of limitations by alleging that "the plaintiffs are barred from any recovery in whole or in part by the provisions of G. L. c. 260."

G. L. c. 231, § 102C, as amended through St. 1967, § 778, that the "decision of, and the amount of the damages assessed, if any, by a district court shall be prima facie evidence upon such matters as are put in issue by the pleadings." We have indicated, however, that a Superior Court judge is not obliged to accept a District Court judge's finding without question even if it is supported by an Appellate Division decision. In *Henry* v. *Mansfield Beauty Academy, Inc.* 353 Mass. 507, 508-509 (1968), we said: "In order to determine whether the Appellate Division correctly ruled that there was no reversible error, its opinion must be reviewed by the judge in the Superior Court. To permit an intelligible review, the record of the trial must be available . . . as background to enable him to rule on the admissibility of 'the decision or finding.' " The reasoning of the *Henry* opinion applies to this case, and a Superior Court judge may exclude from evidence, in a trial following retransfer, a District Court judge's finding which is based on errors of law made by the Appellate Division.

Because of our conclusion in the next section of this opinion that the plaintiffs were not entitled to counsel fees as an element of damages in the nuisance actions, the District Court judge's finding in the amount of $21,000 was based on an error of law and was not admissible in the Superior Court trial.[9]

---

[9] In this circumstance, it is not necessary for us to determine whether the other asserted error of law made by the Appellate Division also would have justified the exclusion of the District Court judge's finding. We add, however, that a finding that a nuisance existed was not compelled as matter of law because of our ruling in *Harrison* v. *Braintree, supra,* at 656, that "the use for industrial access . . . of strips of residentially zoned land on both sides of the . . . [plaintiffs'] property is unreasonable as a matter of law" for zoning purposes. The judge charged the jury that a violation of a zoning law was an element to consider in determining whether a nuisance existed. The plaintiffs raise no challenge here to that instruction.

(3) The judge was correct in ruling that the plaintiffs were not entitled to counsel fees as an element of damages in the nuisance actions. The judge excluded any evidence of counsel fees, and the plaintiffs made a general offer of proof concerning services of their counsel in all matters related to the use of the access roads to the Textron premises.[10]

In *Chartrand* v. *Riley,* 354 Mass. 242 (1968), we declined to follow the direction of some of our earlier opinions and, consistently with more recent opinions, took a restrictive view of the right of a successful litigant to recover counsel fees from one who has wronged him. We held that a plaintiff who successfully brought a mandamus proceeding for reinstatement to his position as a State employee was not entitled to counsel fees. We distinguished from this general rule the result in *Wheeler* v. *Hanson,* 161 Mass. 370 (1894), where counsel fees were allowed to a plaintiff in an action for malicious prosecution. Since our decision in the *Chartrand* case, we have indicated that counsel fees are not recoverable in a variety of situations.[11]

---

[10] That offer of proof included representations of the cost of the services of counsel (and related expenses) in the nuisance actions, in each of the three proceedings against town officials referred to earlier in this opinion, in the Land Court proceeding (*Harrison* v. *Braintree, supra*), in a Federal court proceeding (referred to subsequently in this opinion) and in miscellaneous other matters. No separate offer of proof was made as to services rendered in any specific case. However, we regard the judge's ruling as an indication that he would have excluded evidence of counsel fees in whatever form an offer might have been made.

[11] See *Wachusett Regional Sch. Dist. Comm.* v. *Erickson,* 354 Mass. 768 (1968) (recovery denied of legal expenses incurred in a successful suit to obtain a conveyance of land as directed by statute); *Gallinaro* v. *Fitzpatrick,* 359 Mass. 6, 12 (1971) (successful defendants' counsel fees uncollectible in a suit for specific performance of an agreement to sell real estate); *United Tool & Industrial Supply Co. Inc.* v. *Torrisi,* 359 Mass. 197 (1971) (counsel fees denied prevailing party in an equity proceeding in a Probate Court); *George* v. *Coolidge Bank & Trust Co.* 360 Mass. 635, 640 (1971) (counsel fees denied successful litigant in Superior Court equity proceeding); *Ellis* v.

The plaintiffs rely on our decision in *M. F. Roach Co.*
v. *Provincetown*, 355 Mass. 731, 732 (1969), upholding
an award of counsel fees where the defendant's tortious
conduct required "the victim of the tort [the plaintiff] to
sue or defend against a third party in order to protect his
rights." In that case the defendant "wrongfully inter-
fered" with the plaintiff's performance of a contract with
a third person. Legal expenses incurred by a plaintiff as
the foreseeable consequence of the defendant's tortious
interference with the plaintiff's contract with a third
person are different in character from the legal expenses
incurred by these plaintiffs in challenging governmental
action and conduct of Textron in reliance on that action.
The plaintiffs' counsel fees and expenses (other than
statutory costs) in the various proceedings, other than the
nuisance actions, fall within the general rule of the
*Chartrand* case. With respect to the nuisance actions, it
long has been firmly established that counsel fees
incurred in an action brought to redress a plaintiff's
wrong may not be recovered. *United Tool & Industrial
Supply Co. Inc.* v. *Torrisi*, 359 Mass. 197, 197-198
(1971), and cases cited.

(4) The judge correctly declined to instruct the jury
that the plaintiffs could recover for their loss of comfort
and well-being in addition to the loss of rental value of
their property during the continuance of the nuisance.
There was no evidence of physical injury or mental or
emotional harm to the plaintiffs.[12]

---

*Selectmen of Barnstable*, 361 Mass. 794, 802 (1972) (counsel fees
improperly allowed in declaratory judgment proceeding); *Doherty* v.
*School Comm. of Boston*, 363 Mass. 885 (1973) (counsel fees im-
properly allowed in an arbitration award).

[12]Personal injuries attributable to the defendant's continuing
nuisance were alleged only in the third nuisance action. Mr.
Harrison testified concerning the effect of the use of the driveways on
his "sense of comfort and well-being." Mrs. Harrison testified that
she was bothered by the use of the driveways.

In these circumstances the loss of rental value was the appropriate and sole measure of damages. Noise, lights, dust, intrusions into one's privacy and other inconveniences and annoyances arising from vehicular traffic influence the quality of living conditions and, in turn, the fair rental value of residential premises. However, if these annoyances do not cause identifiable harm to a person, they do not generate a separate claim. To hold otherwise would allow a duplication of recovery.[13]

(5) The judge properly directed verdicts for Textron on the nuisance counts of the minor plaintiffs. There was no evidence that they personally incurred any compensable injury from the maintenance of the nuisance.

(6) The demurrers to the "civil rights" counts properly were sustained. The Harrisons' "civil rights" count against Textron alleged, without any representation of specific facts, that "the defendants . . . have continuously engaged in a conspiracy with various officials of the town of Braintree and others to deprive the plaintiffs, who are citizens of the United States, of their rights, privileges and immunities secured by the United States Constitution and laws." This count alleges further that Textron

---

[13] On a proper showing of independent personal injury, however, damages for emotional distress caused by a nuisance may be entirely appropriate. For example, we have upheld the award of damages for a nervous condition and for distress and discomfort resulting from private nuisances constituting continuing trespasses. See *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447 (1928) (stones from blasting); *Fenton* v. *Quaboag Country Club, Inc.* 353 Mass. 534, 539 (1968) (golf balls). Similar damages were allowed where the defendant's machinery caused the plaintiffs' property to vibrate, making the plaintiffs nervous and upset. *Proulx* v. *Basbanes*, 354 Mass. 559, 562 (1968). In *Ferriter* v. *Herlihy*, 287 Mass. 138, 141 (1934), noise from the operation of a retail milk business created a nuisance, and the plaintiffs were awarded damages "for the interference with the reasonable enjoyment of . . . [their neighboring] home and surroundings and for the nervous effect on . . . [them]." However, that opinion did not discuss the subject of damages. There was nothing wrong with the plaintiff's theory of damages here. It simply lacked evidence to support it.

induced various town officials acting under the color of statute to pursue certain stated courses of wrongful conduct detrimental to the plaintiffs.[14]   The plaintiffs contend that the "civil rights" counts are sufficient to state a cause of action under 42 U. S. C. § 1985 (3) (1964).   The defendants demurred in part on the ground that each "civil rights" count failed to state "with substantial certainty" and "clearly and concisely the substantive facts necessary to state a cause of action." The demurrer was properly sustained.

General, conclusory allegations of conspiracy and inducement are insufficient to support a cause of action. G. L. c. 231, § 7.   See *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 562-564 (1965), cert. den. 382 U. S. 983 (1966); *Greenberg* v. *Board of Assessors of Cambridge,* 360 Mass. 418, 421-423 (1971); *Kopelman* v. *University of Mass. Bldg. Authy.* 363 Mass. 463, 466 (1973).   A "bare conclusionary allegation" that the defendants jointly conspired to deprive the plaintiff of the equal protection of the laws "without any support in the facts alleged" was held insufficient in a Federal case brought under a predecessor statute to 42 U. S. C. § 1985 (3) (1970).   *Dunn* v. *Gazzola,* 216 F. 2d 709, 711 (1st Cir. 1954).   Other Federal cases express substantially the same view.   See *Powell* v. *Workmen's Compensation Bd. of N.Y.* 327 F. 2d 131, 137 (2d Cir. 1964); *Kadlec* v. *Illinois Bell Tel. Co.* 407 F. 2d 624, 627 (7th Cir. 1969), cert. den. 396 U. S. 846 (1969); *Blackburn* v. *Fisk Univ.* 443 F. 2d 121, 124 (6th Cir. 1971); *Powell* v. *Jarvis,* 460 F. 2d 551, 553 (2d Cir. 1972).   Thus, even if we were to apply our new, more expansive rules of civil procedure to the plaintiffs' "civil rights" counts, which we do not do in

---

[14] The plaintiffs' count against unnamed trustees of pension benefit trust funds is substantially identical to this count.   The "civil rights" counts against Textron on behalf of the plaintiffs' minor children incorporate the allegations of the plaintiffs' "civil rights" count against Textron and, therefore, are substantively the same.

this situation (cf. *Charbonnier* v. *Amico, ante,* 146 [1975]), they do not state a cause of action.

The plaintiffs' reliance on *Harrison* v. *Brooks,* 446 F. 2d 404 (1st Cir. 1971), is misplaced. In that case against certain town officials, these plaintiffs alleged a conspiracy to deprive them of the equal protection of the laws. See 42 U. S. C. § 1985 (3) (1964). The issue was whether certain allegations were sufficient for the court to take jurisdiction of the multi-count complaint. The court concluded that the allegations were sufficient for jurisdictional purposes as to two counts which were based in part on 42 U. S. C. § 1985 (3) (1964). The court did not consider whether the allegations were sufficient to state a cause of action.

CONCLUSION.

The final decree in the plaintiffs' appeal from the decision of the board of appeals granting Textron a special permit for Farm River Drive is affirmed, and the plaintiffs' exceptions are overruled. The order for judgment in the certiorari case that the petition be dismissed is affirmed, and judgment shall be entered accordingly. The mandamus case is remanded for further proceedings in accordance with this opinion. The plaintiffs' exceptions in the nuisance actions are overruled.

*So ordered.*