Fabricant, Judith, J.
INTRODUCTION
This action arises from an oil spill alleged to have damaged the plaintiffs’ property. Before the Court is the defendants’ motion to dismiss six of the seven counts of the complaint. For the reasons that will be explained, the motion will be allowed in part and denied in part.
BACKGROUND
The First Amended Complaint alleges that the plaintiffs own contiguous parcels along the Chelsea River; Forbes Park owns what is referred to as the “upland parcel,” and Seawall Really owns what is referred to as the “waterfront” parcel.[1] Plaintiffs’ property “is the subject of a major private development initiative.” Defendants own land on the river on which they operate a “tank farm” for the storage of oil. On *379 March 8, 2006, a release of some 20,000 gallons of oil occurred from the defendants’ property into the river, “causing property damage and injury ... to both the Upland Parcel and the Waterfront Parcel.” Under the direction of various public officials, defendants “commandeered” the plaintiffs’ property “as a platform from which to perform response actions,” and “physically evicted the Plaintiffs and their agents . . . specifically including the agent from the Plaintiffs’ lender, . . . and interfered with the various construction and development activities occurring thereon.” The lender’s agent was engaged in a site visit “to assess the status and direction of the Project so that additional and anticipated loan proceeds would be made available to advance the Project.” The release and the presence of the defendants’ agents on the property caused the lender to decline increased funding, accelerate the loans, and place the plaintiffs in default. To obtain replacement financing, plaintiffs had to incur various fees as well as “a substantial premium in the cost to develop the Project so as to meet the requirement that union contractors be retained for all construction work at the Property.”
Based on these allegations, the complaint asserts seven counts: negligence (count I); strict liability (count II); trespass (count III); nuisance (count IV); liability for response costs under G.L.c. 21E, §4 (count V); liability for property damage under G.L.c. 2IE, §5 (count VI); and discharge of petroleum in violation of G.L.c. 91, §59A (count VII). The complaint seeks damages, without further specification, as well as response costs under c. 2 IE, double damages under c. 91, §59A, and attorneys fees and costs. Defendants now move to dismiss all counts except the claim for response costs under G.L.c. 2 IE, countV.
DISCUSSION
A motion to dismiss “argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice §12.16 (1974). In considering such a motion, the court takes as true the well-pleaded factual allegations of the complaint, as well as such inferences as may be drawn from them in favor of the non-moving party, Nader v. Citron, 372 Mass. 96, 98 (1977), but disregards legal conclusions cast in the form of factual allegations. Schaer v. Brandeis University, 432 Mass. 474, 477 (2000). To survive a motion to dismiss under current law, the complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief,” and “must be enough to raise a right to relief above the speculative level.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).
In evaluating the sufficiency of the complaint, the Court is generally limited to the complaint itself and materials attached or appended to it or incorporated by reference in it. In some circumstances, the Court may also consider public records that are central to the subject matter of the dispute. See Schaer, supra, 432 Mass. at 477. Here, the defendants urge the Court to consider pleadings and other materials filed by the plaintiffs in an action they brought against their lender to enjoin the lender from accelerating the loan and exercising rights to collateral.[2] The Court has reviewed those materials, but is not persuaded that they have any significant bearing on the sufficiency of the allegations in the present case.
Defendants raise a series of arguments in support of their motion to dismiss as to all six counts: (1) The plaintiffs’ allegation of consequential damages arising from the release is implausible because it is inconsistent with the position taken by the plaintiffs in their prior action against the lender;[3] (2) the facts alleged do not indicate that the damages claimed were foreseeable, so as to be recoverable as consequential damages; and (3) the complaint does not adequately allege physical damage to the property, so as to provide a basis for recovery for economic loss. In addition to these common theories, defendants argue that count II fails to state a claim of strict liability, in that the complaint fails to allege facts indicating that the release resulted from an abnormally dangerous activity; count III fails to state a claim for trespass, since no intentional, unprivileged intrusion on land is alleged; and count IV, alleging nuisance, is barred by the statute of limitations and fails to allege any condition on defendants’ property affecting plaintiffs’ use of their property. The Court will address these arguments in turn.
1. Theories Common to Counts I, II, III, IV, VI, and VII.
The substance of the contention raised in the plaintiffs’ prior complaint, and in an affidavit submitted in support of a motion for preliminary injunction in that case, was that the lender acted wrongfully in accelerating the loan based on the release and related events, since the release need not have had any effect on the development project. That contention does not undermine the plaintiffs’ position here, which is that the lender in fact did accelerate the loan based on the release, whether legitimately or not, and that the release thereby caused the consequential damages for which the plaintiffs seek to recover. The allegation on its face is not implausible.[4]
As defendants point out, their liability in negligence is limited to those damages that were “within the scope of the foreseeable risk arising from the negligent conduct.” Jupin v. Kask, 447 Mass. 141, 146 (2006). The allegations of the complaint are that defendants released oil into a river that ran along property on which plaintiffs were actively engaged in construction, and that response actions triggered by the release forced a temporary halt to construction activity and prevented plaintiffs and their agents from having access to plaintiffs’ property. It is certainly plausible that such *380 conduct would cause harm to plaintiffs’ development effort, along with physical damage to the property. The precise scope of the harm, and whether each component of it would have been foreseeable, remains to be determined.[5] At this stage, it is enough to say that the allegations of the complaint provide a plausible claim of liability for some economic harm.
The complaint does, contrary to the defendants’ contention, allege property damage to both plaintiffs’ parcels. It does not detail the damage, but it does not need to; certainly it is plausible that a large-scale release of oil into a river would cause physical damage to abutting land. Such damage might be minor if response is prompt and thorough, but that does not make it non-existent. Here again, defendants cite plaintiffs’ filings in the prior action, which included statements to the effect that an environmental engineer found “no impact” on the project and “no issues” resulting from the release. Those statements, useful as they may ultimately be to defendants for impeachment purposes, do not render implausible the allegation that the release caused some property damage, however small, short-lived, or distant from the construction site it may have been.
Defendants correctly point out that G.L.c. 2IE, §5, establishes liability only for “damage to . . . real or personal property,” not for consequential economic damages. See Garweth v. Boston Edison Co., 415 Mass. 303, 307 (1993). Plaintiffs’ recoveiy under Count VI is therefore limited to property damage, and will not extend to economic loss. As pled, however, Count I suffices to encompass economic losses foreseeably resulting from the release.
2.Strict Liability — Count II.
Massachusetts law recognizes strict liability for harm resulting from a defendant’s “abnormally dangerous activity.” Whether the activity in issue is abnormally dangerous is a matter to be determined on the particular facts of the case, considering the activity “in light of surrounding circumstances,” particularly “the nature and extent of the risk.” Factors to be considered include “whether the activity involves a high degree of risk of harm”; the gravity of the harm that may result; “whether the risk cannot be eliminated by the exercise of reasonable care”; “whether the activiiy is not a matter of common usage”; “whether the activity is inappropriate to the place where it is carried on”; and “the value of the activity to the community.” Clark-Aiken Co. v. Cromwell-Wright Co., Inc., 367 Mass. 70, 89 (1975) (adopting Restatement 2d: Torts, §519. The parties have identified no Massachusetts appellate decision applying this or a similar standard to activities involving storage of oil.[6]
Here, the complaint alleges that the defendants own and operate a fuel tank farm, connected by pipelines to a loading dock, and that transfers between tanks require use of the pipeline system. The complaint goes on to allege that a maintenance contractor for one of the defendants removed valves from the pipeline, leaving an uncapped gap; that an employee of one of the defendants left the site unsupervised except by the contractor; and that an employee of another defendant attempted to use the pipeline to transfer oil from one tank to another, triggering the release.
Application of the Restatement factors to these facts yields mixed results. Storage and transportation of oil inevitably poses some risk of release, with resulting grave harm to property, as well as potential personal injury. But such activities are both common and valuable (even necessary) to the community, and the risks generally can be eliminated, or at least minimized, by the exercise of reasonable care; indeed, plaintiffs implicitly acknowledge as much, including as they do allegations of negligence by defendants’ employees as well as its contractor. Nothing in the complaint provides any basis for concluding that defendants’ activiiy is inappropriate to its location. Overall, the Court is not persuaded that the facts alleged plausibly suggest an entitlement to relief on a strict liability theory. Accordingly, the motion to dismiss will be allowed as to count II.
3. Trespass — Count III.
An unprivileged, intentional intrusion on land in the possession of another constitutes a trespass. See New England Box Co. v. C&R. Const. Co., 313 Mass. 696, 707 (1943). Defendants argue that plaintiffs have failed to allege an unprivileged, intentional intrusion, because the allegations of the complaint indicate that the release was unintentional, and that the subsequent “comandeer[ing]” of the plaintiffs property for response actions was at the direction of public officials, and immunized from liability under G.L.c. 2 IE, §4. Plaintiffs, in response, rely on the allegations in their complaint that the defendants failed to take the steps required of them under G.L.c. 2 IE in response to the spill, and thereby incurred civil penalties; plaintiffs point out that the failure to remove a substance from the land of another can constitute a trespass. See Restatement 2d: Torts, §161(1).
The problem with the plaintiffs’ theory is that their complaint does not allege any failure to remove oil from the plaintiffs’ property; the only allegation in this regard is that the defendants failed to comply with G.L.c. 2 IE, without any indication of the nature of the failure. A failure to remove oil from the plaintiffs’ property would constitute a failure to comply with the statute, but so would a failure to remove it from other locations, or to complete and submit required reports.[7] The latter statutory violations would not constitute trespass on the plaintiffs’ property. The Court therefore concludes that the complaint fails to state a claim of trespass, and count III must be dismissed.
4. Nuisance — Count IV.
Defendants contend that the nuisance claim is barred because it was brought more than two years after the damage occurred; they rely on Harrison v. *381 Textron, 367 Mass. 540, 552 (1975), and cases cited. As plaintiffs point out, however, the applicable statute of limitations, G.L.c. 260, §2A, was amended in 1973 to set a three-year limitations period. See st. 1973, c. 777, §1; Murphy v. Town of Chatham, 41 Mass.App.Ct. 821, 824 (1996); Asiala v. Fitchburg, 24 MassApp.Ct. 13, 19 (1987).
Defendants argue also that the complaint fails to allege any condition on defendants’ property that caused unreasonable interference with the plaintiffs’ use of their property, as required to state a claim for nuisance. See Asiala v. City of Fitchburg, 24 Mass.App.Ct. at 17. The Court is not persuaded. The complaint alleges that the defendants had an oil pipeline on their property in a defective condition, in that it had a gap that led to a release of oil, and that the release damaged the plaintiffs’ property and adversely affected its use. That is enough to state a claim of nuisance. See Taygeta Corp. v. Varian Assocs., 436 Mass. 217, 230-31 (2002).
CONCLUSION AND ORDER
For the reasons stated, the defendants’ Joint Motion to Dismiss Counts I, II, III, IV, VI, and VII of the First Amended Complaint, and All Claims for Consequential Damages, is ALLOWED as to counts II and III, and otherwise DENIED.

The complaint does not further describe the physical configuration of the two parcels. At argument, counsel provided a diagram showing the upland parcel lying mostly inland of the waterfront parcel, but abutting the river at either end of it.

Forbes Park, LLC, et al. v. Hudson Debt Fund I, LLC, Suffolk Civil Action No. 06-2588-BLS.

Defendants forswear reliance on a theory of judicial estoppel, apparently recognizing that they are not in a position to show that plaintiffs’ earlier assertion of what defendants characterize as an inconsistent position was successful. See East Cambridge Savings Bank v. Wheeler, 422 Mass. 621, 623 (1996). At argument, counsel reported that the earlier litigation was dismissed by agreement.

The Court is not persuaded that the plausibility standard established in Iannachino and Twombley is quite as broad as defendants suggest, authorizing the Court to compare the allegations of the complaint with positions taken by the plaintiffs in a separate context, even where the standard for judicial estoppel is not met. For present purposes, however, it is sufficient to say that the Court perceives no conflict.

One could fairly be skeptical of the claim that defendants’ conduct foreseeably caused the plaintiffs to incur “a substantial premium in the cost to develop the Project so as to meet the requirement that union contractors be retained for all construction work at the Property.” The relationship between the release and the circumstances that resulted in that requirement seems attenuated at best.

Plaintiffs cite Curran v. Mass. Tkpe. Auth. 2 Mass. L. Rptr. 260, 1994 Mass. Super. LEXIS 546 (1994), in which a judge of this court concluded that the maintenance of multiple underground gasoline storage tanks in a location near to and upgradient from a residential community relying on well water could be found to be unreasonably dangerous. Defendants cite Stockbridge Comm. Assn. v. Star Enterprise, 1992 WL 884453 (Va.Cir.Ct. 1992), in which a trial court judge dismissed a claim for strict liability based on the operation of a petroleum storage and distribution facility on a tank farm above a ground water table leading to nearby residential communities. The parties also cite Wellesley Hills Realty Trust v. Mobil Oil 747 F.Sup. 93101-102 (D.Mass.), in which the Court assumed, without deciding, that operation of a gas station would qualify as an abnormally dangerous activity, but dismissed the claim of strict liability on other grounds. None of these trial court decisions provides much guidance here.

The complaint specifically alleges that the defendants “submitted false, incomplete and misleading information to MassDEP.”